### CARSON LUMBER CO. v. ST. LOUIS & S. F. R. CO.

(District Court, E. D. Oklahoma.    June 4, 1912.)

No. 1,238.

1. CARRIERS (§ 200*)—SHIPMENTS—RATES—RECOVERY BACK.

Plaintiff made intrastate shipments of rough lumber to a certain Oklahoma point for milling and shipment beyond, when there was in force on the carrier's line a milling in transit tariff schedule under which he was entitled to have his inbound shipment rate readjusted to a lower schedule at the time of his outbound shipment. Before the outbound shipment, the milling in transit schedule was canceled, Oklahoma was admitted to statehood, and its corporation commission established a lower rate, which plaintiff paid on the outbound shipment. *Held*, that he could not recover back any part of the rate paid on the inbound shipments.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 901–905; Dec. Dig. § 200.*]

2. CARRIERS (§ 189*)—RATES—REMEDY OF SHIPPER.

The tariff published and filed as required by law governs between the shipper and carrier, and, if unjust and unreasonable, resort must be had by proper proceedings to correct the injustice before the shipper can secure redress on such account.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 162, 854, 855, 859–865; Dec. Dig. § 189.*]

3. CARRIERS (§ 189*)—RATES—RIGHTS OF SHIPPER.

Freight rates being creatures of law and of its administration, and not of contract, a shipper of lumber to be milled in transit could not, by contract at the time of his inbound shipments, acquire a vested right to a through rate applicable to both inbound and outbound shipments.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 162, 854, 855, 859–865; Dec. Dig. § 189.*]

4. CARRIERS (§ 202*)—SHIPMENT—RATE—MEASURE OF RECOVERY BACK.

Where rough lumber is shipped to a point for milling in transit and shipment beyond, the arrangement being that on making the outbound shipment the higher inbound rate shall be readjusted to a lower schedule, the measure of the shipper's recovery for the carrier's wrongful refusal to make such readjustment is the difference between the aggregate amounts actually paid on the inbound and outbound shipments, and the amount which would have been payable under the lower schedule, and not a difference estimated on the inbound shipments alone; a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

milling in transit rate being an entirety which must be accepted and carried out in full or not at all.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 906–915; Dec. Dig. § 202.*]

Action by the Carson Lumber Company, a corporation, against the St. Louis & San Francisco Railroad Company, a corporation. Judgment for defendant.

Howe & Stanley, of Hugo, Okl., for plaintiff.
R. A. Kleinschmidt, of Oklahoma City, Okl., for defendant.

POLLOCK, District Judge. This is an action brought by plaintiff to recover from defendant a sum of money alleged to be the difference between that which plaintiff did pay, and what it should have been required to pay, on certain shipments of lumber over defendant's line of railway. On issue joined, the parties, by stipulation made and filed in the case, waived a trial by jury and submitted the matter to the judgment of the court on an agreed statement of the facts, filed herein, and on briefs and arguments of counsel.

The controversy, in so far as necessary to decision of the rights of the parties, may be briefly summarized, as follows: Between August 8, 1907, and February 27, 1908, while Oklahoma Territory and the Indian country were under territorial forms of government, plaintiff made various shipments of rough lumber over the line of road of the defendant to Hugo, Okl., for milling in transit at that point and shipment beyond during a period when there was in force a milling in transit privilege and a scale of rates applicable thereto which had become effective on April, 1907. When the outbound movements of the finished product took place from March 4, 1908, to September 15, 1908, the milling in transit rates and privileges had been canceled, Oklahoma had become a state, and its Corporation Commission had established a lower mileage scale of rates than those in effect at the time of the inbound movements. It is the contention of plaintiff the scale of inbound rates from points of origin to Hugo which were paid by it on inbound movements exceeds the scale of rates contained in the milling in transit tariff, and that the latter were applicable to be used on inbound movements, and it brings this suit to recover the difference. Upon the outbound movements the plaintiff paid the scale of rates established by the Oklahoma Corporation Commission. It appears from the agreed statement of facts the inbound movements were made under the sets of tariff known as 856–B which became effective March 20, 1906. The amount paid by plaintiff, therefore, in accordance with the scale of rates contained in that tariff, was the sum of $6,193.14. It is claimed by plaintiff if the rates contained in the milling in transit tariff had applied to the inbound movements, as they should have been, the total amount payable by it on the inbound movements would have been $1,700.78. Therefore plaintiff demands judgment for the difference between the amount actually paid and that

which it now alleges should have been paid; same being the sum of $4.449.18.

By the fifth paragraph of the agreed facts, it is stipulated as follows:

"It is further agreed that the defendant recognizes its liability upon those cars mentioned in plaintiff's petition and which moved to interstate points, there being eight of said shipments."

Therefore, in so far as the interstate shipments are concerned, as defendant acknowledges its liability for the amount demanded on them, nothing further need be said. The matters hereinafter considered have reference alone to intrastate shipments.

[1] At the time of the inbound movements, defendant's tariff 856–B was in effect, it having been duly filed and published as required by law. There was also in effect an amendment No. 11, to defendant's tariff 25–D (I. C. C. No. 5,585) which became effective June 26, 1907, providing a mileage of local and joint rates, which, as above stated, were lower than the corresponding mileage scale of rates in tariff 856–B, and containing regulations for the application of that tariff upon shipments of forest products in car loads which were milled, concentrated, or reconsigned in transit. Under this tariff rough lumber could be shipped into milling or concentrating points such as Hugo upon the higher scale of rates prescribed in defendant's tariff 856–B, and when 65 per cent. of the manufactured product should be shipped out the lower scale of rates contained in amendment No. 11 was then applied to the aggregate mileage of the inbound and outbound movements, and the freight payable by the shipper would be adjusted in accordance therewith. In amendment No. 11, under the heading "Application of Rates," it is provided as follows:

"Effective June 26, 1907.

"The rates named herein unless otherwise specified, will only apply on shipments of forest products car loads, which move into milling, resawing, reconsigning or concentrating points, and when the manufactured products or shipments that have received concentrating privilege are reshipped via the St. Louis & San Francisco Railroad from such milling, resawing, reconsigning or concentrating points to destinations named in and under rates covered by tariffs Nos. 186, 200, 368, 546, 599, 900 and 904 series, but will not apply on shipments moving between points within the state of Arkansas or between points within the state of Missouri (will not apply on sections 3 and 4)."

On page 3 of the same tariff occurs the following:

"Effective June 26, 1907.

"On shipments of lumber, car loads to be resawed, planed, dressed, tongued, grooved, seasoned or manufactured into box material, vehicle and agricultural shapes at resawing points the following will govern, subject to specific rules named below."

Then follows a list of originating points, which includes the point at which the lumber in controversy in this case originated and a list of milling or concentrating points, which includes Hugo, and the schedule of rates applicable thereto. There was also in effect at the time of the inbound shipment the following provision in defendant's tariff 25–D:

"Effective April 1, 1907.

"These rates apply only when shipments of lumber to be rehandled or billed into milling or stop-over points at local tariff rates: The difference

between local ·rates and the above ·rates will be refunded when lumber is resbipped via the Frisco, the weight of lumber reshipped to be sixty-five per cent. of the inbound weight."

The inbound shipments in question moved from their various points of origin to Hugo during a period when the rates and milling in transit regulations above set forth were in effect. These rates and regulations continued in effect until March 2, 1908, on which date amendment No. 33 to defendant's tariff 25–D became effective. By this amendment the defendant canceled the milling in transit privileges and rates applicable thereto on movements within the state of Oklahoma by giving notice in the following language:

"Notice.  Cancellation of milling in transit on forest products between points within the state of Oklahoma, effective, interstate, March 31, 1908, intrastate March 2, 1908.  Cancel all milling in transit rules shown in tariff or amendments thereto between points within the state of Oklahoma.  Milling in transit arrangement discontinued.  (F. 1,834.)"

All the above tariffs and amendments thereto were duly filed with the Interstate Commerce Commission. It is admitted Hugo was a resawing, planing, milling, reconsigning, and concentrating point for rough lumber on defendant's line. On this state of facts it is clear, while it is admitted the agreed facts the inbound shipments were made under tariff 856–B, yet the plaintiff was entitled to the milling in transit privileges accorded by amendment No. 11 to tariff 25–D above referred to. The two tariffs were in effect concurrently, and the one was obviously intended to supplant the other; hence they must be construed together. The plaintiff was therefore entitled by the tariffs then in force to the milling in transit rates and privileges. This gave to plaintiff the right to the lower rates prescribed in amendment No. 11 and applicable to the aggregate inbound and outbound movements and entitled it, so long as that tariff remained in force, to a readjustment of the amounts which it paid on the inbound movements whenever the outbound movements within the 65 per cent. limitation should be made. But the milling in transit privilege thus granted was canceled by amendment ·No. 33 to defendant's tariff 25–D effective March 2, 1908.

[2] As between the shipper and the carrier the rights of the parties are necessarily measured by the tariffs published and filed as by law required whether applicable to state or interstate movements. Before a plaintiff can become entitled to recover from a carrier on account of an alleged·overcharge or for a refund based upon an alleged misapplication of rates, he must be able to point to the lawfully established rates or regulations which entitle him thereto. If the rates in effect are unjust or unreasonable, a resort must be had by appropriate proceedings to the established tribunal to correct the injustice before the shipper is entitled to any redress on such account. In an action of this character, the only question between the shipper and the carrier is, what were the legal published rates and regulations, and not, what they should have been. The milling in transit privilege was canceled by a lawfully published tariff prior to the making of outbound movements from Hugo; hence such cancellation is conclusive

against the right of plaintiff to recover in an action of this character. Prior to the admission of Oklahoma to statehood, the federal government exercised jurisdiction over rates in territories of which the state was thereafter created. This jurisdiction was provisional until such time as the state should itself become a sovereign by reason of its admission into the Union. Oklahoma became a state in November, 1907. Thereupon, the jurisdiction of the general government and of the Interstate Commerce Commission over local rates within the state ceased, and the jurisdiction thus relinquished was taken up and exercised by the authority of the new state. The state put into effect a new scale of rates applicable to the outbound movements in question, and those rates became the only lawful charge therefor. It results, therefore, plaintiff paid the lawful rates then in effect upon the inbound movements and the lawful rates in effect on outbound movements, and therefore it has no complaint as to shipments in controversy which had both origin and destination within the state of Oklahoma.

[3] The contention that the plaintiff at the time of the inbound shipments acquired a vested right to the through rate applicable to both inbound and outbound shipments, as provided in amendment No. 11 to defendant's tariff, cannot be upheld. Freight rates are not the subject of contract; they are the creatures of the law and of those charged with its administration. If it were otherwise, a very low milling in transit rate might be established at the instance of some favored shipper without limitation of time as to the outbound movements, and when he had completed his inbound movements the rate might then be raised by lawful process, the result of which would be that the favored shipper would thus secure for an indefinite period of time a vested right to the application of the low rate to both inbound and outbound shipments, while other shippers would be required to pay the higher rate. It is well settled such contracts of shipment entered into between the shipper and a carrier may not be enforced in the face of a published tariff rate for the service. New Haven R. R. v. Interstate Commerce Commission, 200 U. S. 361, 26 Sup. Ct. 272, 50 L. Ed. 515; Armour Packing Co. v. United States, 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681.

[4] Again, although the right which amendment No. 11 to defendant's tariff conferred upon plaintiff, to adjust the freight actually paid on both inbound and outbound movements to the milling in transit scale of rates, had survived the cancellation of the milling in transit rates on March 31, 1908, and also survived the admission of the state of Oklahoma, and the establishment of its Corporation Commission, yet the plaintiff could not recover upon the pleadings and evidence in this case. The measure of recovery would be the difference between the aggregate amounts actually paid upon the inbound and outbound shipments, on the one hand, and the amount which would have been payable under the scale of rates contained in said amendment No. 11.

There is neither allegation nor proof in this case as to what would have been payable by the plaintiff upon the outbound shipments or upon the aggregate of both inbound and outbound shipments at the

milling in transit rates. This action is brought upon the erroneous theory that the milling in transit rates may be applied to the inbound shipments, although the outbound shipments may actually move upon a wholly different rate established by a different authority. As the plaintiff obtained the advantage of the lower State Corporation Commission rate applicable to the outbound movements, and seeks in this action to make the milling in transit rates apply only to the inbound movements, it follows, this cannot be done. A milling in transit rate is an entirety and must be accepted and carried out in its entirety or not at all.

It follows, except as to the eight interstate shipments covered by the fifth paragraph of the agreed statement of facts for which the defendant admits its liability, as claimed in the petition of plaintiff, the plaintiff cannot recover in this action. Judgment will therefore enter that plaintiff take nothing in this case except such an amount as is admitted to be owing plaintiff on the eight shipments contained in paragraph 5 of the agreed findings of fact in amount ($————), and that the defendant recover its costs, taxed at $————.

It is so ordered.