C. W. SHELDON, Senior, Appellee, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

CARRIERS: Construction of Bill of Lading. A bill of lading which 1 clearly provides for carriage to a named ultimate destination does not exclude evidence bearing on stop-over privileges which, with equal clearness, are specified in the bill.

CARRIERS: Stop-Over Privileges Invalidating Contracts. An inter-2 state bill of lading is void which provides for the carriage of goods to an ultimate point of destination *for the legal rate to said point,* but with provision for stop-over privileges at intermediate points without payment of local freight charges at said stop-over points, as provided for such a service by the rates duly filed with the Interstate Commerce Commission, even though the *through* rate which the shipper contracted to pay was the legal *through* rate to such intermediate points.

*Appeal from Fremont District Court:*—THOMAS ARTHUR, Judge.

OCTOBER 25, 1918.

SUIT to recover damages alleged to have been caused by failure to carry out agreed-to shipping directions. Defense, in effect, that the shipping agreement relied on is void in law, because not authorized by tariffs on file with the Interstate Commerce Commission. Judgment for the plaintiff, and defendant appeals.—*Reversed.*

*O. M. Spencer,* and *Tinley, Mitchell & Thornell,* for appellant.

*Hickman & Chantry,* for appellee.

SALINGER, J.—I. The trial court held—and it is the law of the case—that the sole basis for the suit of plaintiff is a bill of lading; that same is the only contract between the parties. The contract was executed and received subject to the classifications and tariffs in effect on the date of the contract, and is the "uniform bill of lading—standard form of straight bill of lading approved by the Interstate Commerce Commission by Order No. 787 June 27, 1908."

The tariffs of the defendant have been duly lodged with the Interstate Commerce Commission; and if notice by posting is an essential to having these tariffs in force, sufficient notice of these tariffs was given. See *Kansas City S. R. Co. v. Albers,* 223 U. S. 573 (32 Sup. Ct. Rep. 316); *Texas & Pac. R. Co. v. Cisco Oil Mill,* 204 U. S. 449 (27 Sup. Ct. Rep. 358). It does not avail, if it were true, that these tariff charges were excessive or otherwise unlawful. The sole remedy for that is obtaining a change on direct appeal to the Interstate Commerce Commission. *Carson Lbr. Co. v. St. Louis & S. F. R. Co.,* 198 Fed. 311; *Robinson v. Baltimore & O. R. Co.,* 222 U. S. 506 (32 Sup. Ct. Rep. 114); *Texas & Pac. R. Co. v. Abilene Cotton Oil Co.,* 204 U. S. 426 (27 Sup. Ct. Rep. 350). No agreement to give a freight rate

for this shipment other or lower than the one fixed in said tariffs is enforcible—it is void. If the rate be lower than the tariff rate, and the carrier accepted payment, it may maintain a suit to recover the difference. *Savannah, F. & W. R. Co. v. Bundick,* 94 Ga. 775 (21 S. E. 995) ; *Dunne & Grace v. St. Louis & S. W. R. Co.,* 166 Mo. App. 372 (148 S. W. 997) ; *Sutton v. St. Louis & S. F. R. Co.,* 159 Mo. App. 685 (140 S. W. 76) ; *Illinois Cent. R. Co., v. Henderson Elev. Co.,* 226 U. S. 441 (33 Sup. Ct. Rep. 176) ; *Hunter v. St. Louis & S. F. R. Co.,* 167 Mo. App. 624 (150 S. W. 733) ; *Texas & Pac. R. Co. v. Mugg,* 202 U. S. 242 (26 Sup. Ct. Rep. 628) ; *Louisville & N. R. Co. v. Allen,* 152 Ky. 145 (153 S. W. 198) ; *Kansas City S. R. Co. v. Albers,* 223 U. S. 573 (32 Sup. Ct. Rep. 316) ; *Atchison T. & S. F. R. Co. v. Kinkade,* 203 Fed. 165. The same rule prevails where, through mistake, a joint rate other than the tariff rate is given. *Kansas City S. R. Co. v. Albers,* 223 U. S. 573 (32 Sup. Ct. Rep. 316).

II. In some form, the parties agreed that a car of apples shipped from Percival, Iowa, to Ft. Morgan, Colorado, should be stopped in transit at two designated points *en route,* for partial unloading. The major question is whether such agreement is void because of tariffs duly on file with the Interstate Commerce Commission.

There is quite a controversy over whether the trial court rightly received testimony tending to show that the station agent of defendant who received the shipment had orally agreed, before the bill of lading was executed, that said stoppages in transit might be made. This controversy needs no consideration, beyond saying:

(1) Though such testimony was aptly objected to, the rulings admitting it over the objection were not excepted to.

(2) What is more controlling, even, the agreement to make these stops found its way into the bill of lading.

(3) The defendant contends rightly that whatever was

said between the plaintiff and the agent was embodied in the bill of lading, from which it follows that receiving the testimony was, in any event, without prejudice, because the writing incorporated the antecedent conversations, and, therefore, was not varied by testimony stating such conversations. The trial court dealt with the contract as written; therefore, no prejudice resulted from receiving this testimony.

### 2a

The refusal to take the proffered testimony of B. G. McCarty excluded only what the appellant was allowed to prove in better form. Moreover, the ruling rejecting the testimony was not excepted to.

### 2b

The defendant objected to testimony by the plaintiff that he filed a claim with the company for the amount now claimed, and received from it a written acknowledgment that the claim was received, which was Exhibit 6. Whether this competently proved a claim need not be considered. The objection was overruled, and no exception was taken to the ruling.

### 2c

Reliance is placed on a "rule" applying to stop-over privileges. It may be conceded, for the sake of argument, that this rule prohibits stoppage in transit, to unload or partly unload. But it contains the specific provision that "rules governing stopping in transit will not apply on shipments consigned to 'shipper's order.'" The consignment in this case was to the shipper. Hence, the rule is not material in this case, if it be conceded it is shown to be formulated by competent authority.

III. One argument for the appellant is that, since the bill of lading contains a direction that the shipment is to

go to Ft. Morgan, *no* evidence is competent which attempts
to show the further directions to stop in

1. CARRIERS :
   construction of
   bill of lading.

transit. The claim is too broad. The writ-
ten contract contains, not only the direction
to ship to Ft. Morgan, but also the direction to stop in
transit. It must be construed as a whole, and the one
direction is no more potent than the other. The question
is not one of reception of testimony, but the legal effect of
the agreement as a whole.

The vital question, then, is whether the contract, as
embodied in the bill of lading, is violative of the Interstate
Commerce Act and, therefore, void.

The tariff rate to Ft. Morgan is the same as the one to
Akron—the first stop in the shipping directions. Stopping
at Akron, a local freight charge must be paid to reach the
next stop, Brush, and another such charge

2. CARRIERS :
   stop-over priv-
   ileges invalidat-
   ing contracts.

to reach Ft. Morgan from Brush. Should
the shipment first go to Ft. Morgan, these
same local charges must be made, to reach Brush and then
Akron. Stop the shipment at Akron, then at Brush, and
take it on to Ft. Morgan at the rate which this plaintiff
paid, and he would give less than the tariff rate by the sum
total of said two local freight charges. That is to say,
were it not for the contract, he would have to pay more
than he did pay for the service contracted for. True, the
tariff rate to Ft. Morgan, without stop, is the rate that he
did pay; but the service he contracted for demands a higher
tariff rate than he paid. The trial court was rightly of
opinion that the carrier was at liberty to give the higher
price service and collect the difference. But we cannot
agree to the deduction that, therefore, the contract is valid.
That, notwithstanding acceptance of the lower sum, the
difference is collectible, proves that the contract is nuga-
tory, rather than valid. The right to collect the shortage
is a remedy that exists because nothing can validate the

contract for the lesser rate. Without any specific contract, the carrier might make these stops, and collect the tariff rate. That the thing desired by the shipper might lawfully be done, if the tariff rate be collected, does not give life to a contract to perform the service at less than tariff rates. The cases that hold all agreements for a rate less than the tariff rate to be void fully cover this case. It follows that the judgment below must be reversed, with directions to the trial court to enter judgment for the defendant.— *Reversed.*

Preston, C. J., Ladd and Evans, JJ., concur.