TELECONNECT COMPANY, Appellant,

v.

U.S. WEST COMMUNICATIONS, INC., a Colorado corporation, f/k/a Northwestern Bell Telephone Company, Appellee.

No. 92–1460.

Supreme Court of Iowa.

Nov. 24, 1993.

Thomas M. Collins, Kevin H. Collins, and Mark L. Zaiger of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellant.

Kasey W. Kincaid of Faegre & Benson, and George A. Carroll of U.S. West, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

The controlling question here is whether the "filed tariff" doctrine bars one utility's contract and tort claims against another utility when the terms of the disputed service are regulated by tariffs filed publicly with a regulatory agency.

With our permission, plaintiff Teleconnect Company (Teleconnect) appeals the district court's ruling denying its demand for a jury trial and its motion to disqualify defendant's counsel. Defendant U.S. West Communications, Inc. (or U.S. West, formerly Northwestern Bell or Bell) cross appeals the district's court's denial of its motion for summary judgment based on the "filed tariff" doctrine. We reverse the district court's denial of U.S. West's motion for summary judgment. That decision renders the other issues on this appeal moot. We remand the case to the district court with directions that it enter an order sustaining defendant's motion for summary judgment and dismissing plaintiff's petition.

I. *Background facts and proceedings.* The events leading to this appeal occurred over a decade ago. In the early 1980s Teleconnect had emerged, in the wake of the governmental breakup of the telephone monopoly held by American Telephone & Telegraph, as a successful long distance company. It wanted to expand into local service. Therefore, in the spring of 1983, Northwestern Bell and Teleconnect began negotiations over Bell's sale of local telephone service to Teleconnect for resale to corporate and institutional customers. On May 26, 1983, Clark McLeod, the president and founder of Teleconnect, received a letter from a Bell sales manager who stated Bell's support of Teleconnect's proposed resale of local service to

be purchased from Bell. A month later, however, Bell's general manager for sales wrote McLeod to inform him that an Iowa utility regulation (or "tariff") prohibited Bell from selling Teleconnect the type of service it wanted.

Teleconnect then sued Bell in Iowa district court under a variety of theories. The ensuing litigation was removed to federal district court, then remanded back to Iowa district court, then removed to federal court, and remanded to Iowa district court once again. Teleconnect's present petition asserts claims against Bell (now U.S. West) for (1) breach of contract; (2) fraud and fraudulent representation; (3) negligence; (4) breach of fiduciary relationship; and (5) tortious interference with business relations.

The district court denied defendant U.S. West's motion for summary judgment based on the "filed tariff" doctrine, granted U.S. West's motion to strike Teleconnect's jury demand, and denied Teleconnect's motion to disqualify U.S. West's counsel from proceeding further in the case. We granted the parties' applications for interlocutory appeal on all three rulings but only need to address one of them. We will provide further details regarding the facts and proceedings in the course of our analysis.

II. *Filed Tariff Doctrine.* U.S. West cross appeals the district court's denial of its motion for summary judgment based on the theory that the "filed tariff" (or "filed rate") doctrine bars Teleconnect's claims. U.S. West points to a 1979 tariff filed with and approved by the Iowa State Commerce Commission that prohibited new carriers from purchasing the service Teleconnect wanted. U.S. West asserts that under the filed tariff doctrine, Teleconnect has no claim under its various contract and tort theories because the published tariff constructively notified Teleconnect that it did not qualify to purchase the service. Neither party disputes that such a tariff was on file with the Iowa State Commerce Commission at the time the alleged actions in this dispute occurred, nor does either party question the validity of the tariff.

For purposes of this review of the district court's ruling against U.S. West's motion for summary judgment, we will render judgment for the movant "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R.Civ.P. 237(c). No fact question exists if the only dispute concerns the legal consequences flowing from undisputed facts. *Ottumwa Housing Auth. v. State Farm Fire & Cas. Co.,* 495 N.W.2d 723, 726 (Iowa 1993).

Before we can explain our ruling on whether the filed tariff doctrine bars Teleconnect's claim, we must explain the tariff system itself. The Iowa Utilities Board (formerly the Iowa State Commerce Commission) regulates the telecommunications industry and other public utilities through tariffs, or regulations of utility rates and services. Iowa Code section 476.1 (1993) delegates to the utilities board the authority to "regulate the rates and services of public utilities." Under this regulatory scheme, every public utility must "file with the board tariffs showing the rates and charges for its public utility services," and every public utility "shall keep copies of its tariffs open to public inspection under such rules as the board may prescribe." Iowa Code § 476.4. These tariffs contain the terms of service that the parties would ordinarily put into private contracts. These publicly filed tariffs thus ensure uniformity of utility rates and prevent the discrimination of price and service that once pervaded utilities industries. *See generally Southern Pac. Transp. Co. v. Commercial Metals Co.,* 456 U.S. 336, 344, 102 S.Ct. 1815, 1821, 72 L.Ed.2d 114, 121 (1982).

Because of this tariff regime, Bell offered technologically similar services under different tariffs. Until 1979 Bell sold local service to large, institutional customers through the PBX, CENTREX, and CENTRON systems. The University of Iowa, for example, used CENTREX for its old dormitory phones, which all had a 353 prefix. In 1979, pursuant to a tariff, Bell began to phase out its CENTREX service, limiting its use to existing customers.

Meanwhile, as Teleconnect's business grew, it wanted to participate in the local service market by purchasing local service from Bell and then reselling the service to its own customers. Teleconnect needed Bell's CENTREX service, however, if it expected to make a profit. CENTRON, although functionally identical to CENTREX, would have cost Teleconnect more money because of its pricing system.

In early 1983 Teleconnect presented a proposal to Bell to purchase local service. In a May 26, 1983 letter to Teleconnect, a Bell representative stated that its Iowa tariffs "do indeed allow you to share Centrex/Centron service with other telephone users in Iowa." Teleconnect, apparently relying on this interpretation, concluded that it could resell local service under the cheaper CENTREX tariff.

Teleconnect claims that in reliance on Bell's letter, it solicited additional customers, purchased a building, and hired personnel. In a June 28, 1983 letter, however, Bell clarified its prior communication, explaining: "As the tariff states, 'CENTREX is obsolete effective *March 26, 1979* and grandfathered to *existing* customers....' Under that provision, Centrex is not available for the use that you are proposing." (Emphasis added in letter.) Bell indicated, however, that it would support Teleconnect's use of the CENTRON system. Although the May 1983 assurance from Bell failed to distinguish between CENTREX and CENTRON and although Bell retracted a month later any assurance that first letter may have contained, Teleconnect contends that Bell breached a contract with it and intentionally and recklessly caused it substantial injury in these dealings, entitling it to compensatory and punitive damages.

A. This brings us to U.S. West's defense under the "filed tariff" doctrine. U.S. West contends that the filed tariff doctrine insulates it from tort or contract liability in its dealings with Teleconnect because published tariffs determined the terms of Teleconnect's proposed local service offering.

■ The filed tariff doctrine conclusively presumes that both a utility and its customers know the contents and effects of published tariffs. *Maislin Indus., U.S. v. Pri-*

*mary Steel, Inc.*, 497 U.S. 116, 127 n. 9, 110 S.Ct. 2759, 2766 n. 9, 111 L.Ed.2d 94, 109 n. 9 (1990); *Missouri Pac. R.R. v. Rutledge Oil Co.*, 669 F.2d 557, 559 (8th Cir.1982). Under Iowa Code section 476.5, just as under the Interstate Commerce Act and other statutes that establish a tariff system to replace private contracting, neither the customer's ignorance nor the utility's misquotation of the applicable tariff provides refuge from the terms of the tariff. *See Maislin*, 497 U.S. at 120, 110 S.Ct. at 2763, 111 L.Ed.2d at 104.

Thus, a customer of a utility has no cause of action against a utility for alleged negligent or intentional misquotation of a tariffed service. *Id.* at 127 n. 9, 110 S.Ct. at 2766 n. 9, 111 L.Ed.2d at 109 n. 9. Similarly, any contract or agreement to provide a tariffed service on terms other than those set forth in the tariff is void. *Sheldon v. Chicago B. & Q. R. Co.*, 184 Iowa 865, 870, 169 N.W. 189, 190 (1918). To allow otherwise would give a preference to and discriminate in favor of the customer who received the representation. *See* Iowa Code § 476.5 ("No public utility subject to rate regulation shall directly or indirectly charge a greater or less compensation for its services than that prescribed in its tariffs."); *cf. Iowa Elec. Light & Power Co. v. Wendling Quarries, Inc.*, 389 N.W.2d 847, 849 (Iowa 1986) (observing argument that utility undercharges, whether intentional or unintentional, "would be to grant a preferential rebate to a customer in violation of [the] statutory mandate of nondiscriminatory rates").

■ Under the doctrine, the relevant regulatory agency retains primary enforcement authority over utility disputes in which, absent the tariff scheme, contract or tort law would ordinarily govern. *See Elk Run Tel. Co. v. General Tel. Co. of Iowa*, 160 N.W.2d 311, 315 (Iowa 1968); *compare Reiter v. Cooper*, 507 U.S. ——, ——, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604, 618 (1993) ("Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed."); *Taffet v. Southern Co.*, 967

F.2d 1483, 1490 (11th Cir.1992) ("The filed rate doctrine recognizes that where a legislature has established a scheme for utility rate making, the rights of the rate-payer in regard to the rates he pays are defined by that scheme."). Any person dissatisfied with a decision of the utility board may file a petition for rehearing. Iowa Code § 476.12. Judicial review of the board's decision is provided in Iowa district court. Iowa Code § 476.13 (providing for judicial review under Iowa Code chapter 17A).

■ The filed tariff doctrine applies squarely to the alleged agreement between Teleconnect and Northwestern Bell. Teleconnect never asserts that Bell violated the terms of the CENTREX tariff. If it did, it might have had a remedy before the Iowa Utilities Board that would be reviewable in Iowa district court. Instead, however, Teleconnect bases its claims entirely on contract and tort theories. If we allowed Teleconnect to sue U.S. West on these theories, Teleconnect would have the same telephone service as all other Iowa customers (including its competitors), plus a de facto rebate from U.S. West in the amount of any money judgment representing the value to Teleconnect of resold CENTREX service. *See Iowa Elec. Light & Power Co.*, 389 N.W.2d at 849 (noting that a common carrier must charge its tariff rates and any agreement to the contrary is unlawful and void).

We refuse to grant Teleconnect preferential treatment under the otherwise uniform tariff regime that the Iowa legislature and the utilities board have established. The filed tariff doctrine prohibits a customer of a utility from suing that utility in contract or tort over terms governed entirely by publicly filed tariffs. *See Maislin*, 497 U.S. at 126, 110 S.Ct. at 2765–66, 111 L.Ed.2d at 108. Because the filed tariff doctrine bars Teleconnect's suit based on contract and tort allegations and reliance damages based thereon, it appears that U.S. West is entitled to judgment as a matter of law.

B. Teleconnect argues and the district court held that Northwestern Bell's conduct falls outside the control of the filed tariff doctrine in part because its alleged misrepresentation of the CENTREX offering affected only the service Teleconnect would receive from Bell, not the price it would pay. Because the filed tariff doctrine provides no defense against recovery of damages suffered from acts unrelated to rates, Teleconnect argues, U.S. West cannot raise it as a defense against its refusal to sell CENTREX to Teleconnect.

■ We believe this rate/service distinction elevates form over substance. The only significant difference between CENTREX and CENTRON, as Teleconnect itself points out, lies in the pricing of the two packages. The only breach in this alleged May 1983 agreement occurred when Bell refused to sell Teleconnect local service at the price Teleconnect claims Bell promised. Therefore, we must reject Teleconnect's claim that a rate/service distinction applies to this case.

Even if a genuine difference other than price existed between CENTREX and CENTRON, Teleconnect's claim would still fail. We have previously observed that the filed tariff doctrine prohibits discrimination based on service as well as price in *Sheldon*, 184 Iowa at 869, 169 N.W. at 190. In *Sheldon*, the shipper paid the tariffed rate for transport of goods between Percival, Iowa and Fort Morgan, Colorado, but entered into a contract with the carrier for additional service, namely, to make two intermediate unloading stops in Brush and Akron, Colorado. *Id.* The railroad failed to make the intermediate unloading stops and the goods were damaged. *Id.* We held, however, that the contract for additional service was "nugatory rather than valid." *Id.* at 869–70, 169 N.W. at 190.

Teleconnect makes the same allegations that the shipper made in *Sheldon*. There, Mr. Sheldon alleged that the railroad promised but failed to make unloading stops in Brush and Akron; here, Teleconnect alleges that Bell promised but failed to provide CENTREX service for resale. Like the *Sheldon* court, we refuse to recognize agreements between utilities and customers that create prices or other terms beyond those set out in the applicable tariffs.

C. Teleconnect further urges us to agree with the district court's refusal to apply the

filed tariff doctrine to Teleconnect on the ground that Teleconnect sued as a competitor of U.S. West, not as a customer. We decline to do so.

■ Some federal courts appear to have created a "competitor exception" to the filed tariff doctrine in cases in which a competitor of a regulated utility brought a claim under antitrust law alleging that the utility used its rate making power to squeeze out the competitor. For instance, in *City of Kirkwood v. Union Electric Co.*, 671 F.2d 1173, 1179 (8th Cir.1982), on which the district court relied in this case, the court rejected Union Electric's claim that its discriminatory pricing against the city of Kirkwood, Missouri, a customer and competitor of Union Electric, was immunized from antitrust liability by the filed tariff doctrine. The court observed that the doctrine, which "ensures conformity of rates as between customers[,] should not give an unfair advantage to a utility in its dealings with its competitors." *Id.*

The United States Supreme Court's most recent guidance on the application of the filed tariff doctrine in the antitrust context appeared in *Square D Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 423, 106 S.Ct. 1922, 1930, 90 L.Ed.2d 413, 426 (1986). In that case, the Court held that the filed tariff doctrine insulated defendant motor carriers from liability for price fixing under the federal antitrust laws. The plaintiffs in *Square D*, however, were not competitors with the defendants, and the federal courts remain split on whether the competitor exception exists. *Compare In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144, 1161 (3d Cir.1993) (applying competitor exception to filed rate doctrine to allow Sherman Act claim) *with Pinney Dock & Transp. Co. v. Penn Central Corp.*, 838 F.2d 1445, 1457 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988) (applying filed tariff doctrine to insulate defendant from antitrust liability and rejecting competitor exception).

In the present case, the federal district court dismissed Teleconnect's antitrust claims with prejudice, leaving only its contract and tort claims for disposition in state court. Given this posture, the concerns driving any competitor exception to the filed tariff doctrine do not exist under the present pleadings of this case. Unlike the defendant in *City of Kirkwood*, there is no evidence in this case that U.S. West has placed a price squeeze on Teleconnect that renders U.S. West's local service any cheaper than Teleconnect's would have been. U.S. West invokes the filed tariff doctrine to shield itself from contract and tort claims, not antitrust liability. To the extent that a competitor exception exists, it serves to avoid the potential anticompetitive conduct that can occur when utilities file tariffs in a predatory or discriminatory manner. Absent any threat to competition under the antitrust laws, to apply in this case a competitor exception to the filed tariff doctrine would only encourage other customers of utilities to seek preferential rates below those set by publicly filed tariffs.

D. Teleconnect raises two other exceptions to the filed tariff doctrine, neither of which we believe contain any merit.

■ Teleconnect first contends that the filed tariff doctrine prohibits only "unreasonable" discrimination and that courts may decide whether the proposed deviation from the tariff remains reasonably faithful to its basic terms. We reject this contention. Regulatory agencies, not the courts, have primary responsibility for determining the reasonableness of utilities rates or practices. *See Maislin*, 497 U.S. at 119, 110 S.Ct. at 2762, 111 L.Ed.2d at 104. In 1983 the Iowa State Commerce Commission had primary responsibility for determining whether granting a particular service to a customer constituted a reasonable advantage or preference within the meaning of Iowa Code section 476.5. Thus, "if the present action is predicated on a claim that defendant's·rates were unreasonable, plaintiff does not have a case here." *Oliver v. Iowa Power & Light Co.*, 183 N.W.2d 687, 690 (Iowa 1971).

■ Nor do we agree with Teleconnect's argument that the court should hear its claim because it raises no questions that require agency adjudication. We agree that its allegations of breach of contract, fraudulent misrepresentation, and other claims are not ones

**650**

over which the Iowa Utilities Board has jurisdiction. Merely because the utilities board has no jurisdiction over such claims, however, does not automatically entail that the district court should let the case go to trial. " 'Unless and until [the utility suspends or sets aside a tariff], this rate is made, for all purposes, the legal rate.... The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the [utility].' " *Maislin*, 497 U.S. at 126, 110 S.Ct. at 2765–66, 111 L.Ed.2d at 108 (quoting *Keogh v. Chicago & Northwestern R. Co.*, 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183, 187 (1922)(Brandeis, J.)).

We therefore conclude that the filed tariff doctrine precludes Teleconnect's contract and tort claims against U.S. West. The district court erred in not granting U.S. West's motion for summary judgment on those claims.

III. *Disposition.* We reverse the district court's denial of U.S. West's motion for summary judgment on Teleconnect's claims of breach of contract, fraud and fraudulent representation, negligence, breach of fiduciary relationship, and tortious interference with business relations. Because we hold that the district court should have granted summary judgment for defendant U.S. West, we do not reach the issues raised in Teleconnect's appeal. We remand the cause to the district court with directions to enter an order granting summary judgment for U.S. West and dismissing plaintiff Teleconnect's petition.

**REVERSED ON THE CROSS APPEAL AND REMANDED; APPEAL MOOTED.**