TELECONNECT COMPANY, Appellant,

v.

Michael ENSRUD, Appellee.

No. 93–2460.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1994.

Decided May 10, 1995.

---

Kevin Heath Collins, Cedar Rapids, IA, argued for appellant (Thomas M. Collins and Mark L. Zaiger, on the brief).

Thomas Dean Hobart, Iowa City, IA, argued for appellee.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HEANEY, Senior Circuit Judge.

Plaintiff, Teleconnect Company, seeks to recover damages from defendant, Michael Ensrud, on theories of breach of confidential relationship, breach of employment contract, and misappropriation of trade secrets in violation of the Iowa Uniform Trade Secrets Act, Iowa Code § 550.1, et seq. (1994). At the heart of Teleconnect's case lies the fact that Ensrud, formerly employed by Teleconnect in connection with its ongoing lawsuit against U.S. West Communications, Inc.,[1] later agreed to serve as an expert witness for U.S. West in that same litigation. The district court entered summary judgment for Ensrud, finding, first, that Teleconnect failed to produce "sufficient" evidence of a prohibited disclosure to create a genuine dispute of material fact, and second, that Teleconnect was not entitled to a presumption that Ensrud disclosed to U.S. West whatever confidential information he possessed. *Teleconnect Co. v. Michael Ensrud*, No. C–92–0067, slip op. at 3 (N.D.Iowa Apr. 28, 1993). We reverse and remand.

From 1980 to 1985, Ensrud was employed as a utility analyst for the Iowa State Commerce Commission ("ISCC"). As part of his duties, Ensrud made recommendations to his superiors regarding new and revised tariffs filed by telephone companies, including U.S. West's predecessor in interest, Northwestern Bell. In February 1985, Ensrud joined Teleconnect, a competitor of Northwestern Bell, as a regulatory analyst responsible for maintaining Teleconnect's Iowa tariffs, keeping abreast of federal and state regulatory developments and testifying before the ISCC and other regulatory bodies. Ensrud's employment contract with Teleconnect included a provision in which he "agree[d] not to use or disclose to others, either during or after termination of employment with the Company, any trade secret or confidential information belonging to the Company...." App. 10.[2]

---

1. U.S. West acquired Northwestern Bell Telephone Company, the original defendant in this action, in August, 1990. For clarity and simplicity, we refer to both entities as "U.S. West."

2. Citations to "App. X" are to the parties' Appendix.

Ensrud left Teleconnect in October 1990 to take a position with another telecommunications firm.

On January 6, 1992, Ensrud was contacted by John Shively, an attorney representing U.S. West in its litigation with Teleconnect. Later that month, Ensrud and Shively met in Kansas City, Missouri. Ensrud and Shively both allege that their discussions centered on Ensrud's work at the ISCC and that Ensrud disclosed no information acquired during his employment with Teleconnect. Following that meeting, Ensrud sent to Shively a lengthy letter entitled "My Perception of Important Points Directly Relating to Tariff." Shively states that "[a]fter I began reading the letter, it appeared possible to me that Mr. Ensrud might be writing on the topic of information he acquired while at Teleconnect." Affidavit of John D. Shively at 5; App. 46. Shively alleges that he stopped reading the letter at that point, returned the original to Ensrud, and ordered that all existing copies be destroyed. Ensrud reports that he threw the letter into the garbage. U.S. West designated Ensrud as an expert witness on February 28, 1992, and Teleconnect filed this action on March 26, 1992.

Motions for summary judgment will be granted only where there is no genuine dispute as to any material fact. *See* Fed. R.Civ.P. 56(c). A genuine issue of fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We review *de novo* a lower court's legal conclusion that no genuine issue of material fact existed for trial. *Saffels v. Rice,* 40 F.3d 1546, 1550 (8th Cir.1994). On appeal from a grant of summary judgment, we must give the non-movant "the benefit of every doubt and every favorable inference that may be drawn from the evidence." *Buford v. Tremayne,* 747 F.2d 445, 447 (8th Cir.1984). Summary judgment "should not be entered unless the movant has established its right to a judgment with such clarity as to leave no room for controversy and unless the other party is not entitled to recover under any discernable circumstances." *Kegel v. Runnels,* 793 F.2d 924, 927 (8th Cir.1986). Neither the weigh-ing of evidence nor the assessment of credibility is appropriate at the summary judgment stage. *Grossman v. Dillard Dep't Stores, Inc.,* 47 F.3d 969, 971 (8th Cir.1995). Because Teleconnect presents no direct, firsthand evidence that Ensrud disclosed confidential information to U.S. West, our principal task on this appeal is to assess what inferences might reasonably be drawn from the factual allegations set forth by Teleconnect. In light of Teleconnect's legal claims, our analysis centers on possession and disclosure.

■ It is clear that Teleconnect has alleged facts which, if proven, would establish that Ensrud possessed information intended by Teleconnect to remain confidential. Casey Mahon, corporate general counsel for Teleconnect at the time of Ensrud's employment there, states in her affidavit that Ensrud "functioned as a paralegal" and "was privy to confidential discussions between me, outside counsel and other members of my staff and management concerning the causes of action asserted [against U.S. West], and the underlying factual and legal basis therefore [sic]." Affidavit of Casey D. Mahon at 1, 2; App. 53, 54. Specifically, Mahon states that for several months Ensrud assisted her and outside counsel "in the research, analysis and drafting of the Petition at Law" which launched the litigation between Teleconnect and U.S. West. *Id.* at 2; App. 54. Ensrud's immediate supervisor at Teleconnect, Dennis Ricca, states in his affidavit that he has "a direct and clear recollection" that Ensrud devoted "substantial amounts of time reviewing and working on [the U.S. West petition] before it was filed." Affidavit of Dennis Ricca at 3; App. 58. Ricca's affidavit outlines his recollection of Ensrud's "substantial work over a period of several weeks in which he formulated opinions and drafted a memorandum concerning tariffs" directly at issue in Teleconnect's lawsuit against U.S. West. *Id.* Ricca states that a significant element of his and Ensrud's duties involved communicating and working with Teleconnect's outside counsel, Shuttleworth & Ingersoll, and that "Ensrud's dealings with Shuttleworth & Ingersoll attorneys in connection with the [U.S. West] case formed a part of the job duties for which he was compensated." *Id.*

360

According to Ricca, he and Ensrud discussed the confidential nature of their work with Shuttleworth & Ingersoll. *Id.* at 4; App. 55.

Allan Vestal, an attorney formerly with Shuttleworth & Ingersoll, alleges in his affidavit that he "dealt with" Ensrud in connection with a wide variety of matters, including regulatory and legal strategies and the U.S. West litigation. Affidavit of Allan W. Vestal at 2–3; App. 103–4. Vestal states that "Ensrud played a significant role in the development of legal positions and strategies asserted on behalf of Teleconnect." *Id.* at 3; App. 104. The affidavit of Philip Stoffregen, an attorney who represented Teleconnect before the ISCC and who has been retained by Teleconnect as an expert witness in the U.S. West litigation, alleges that Ensrud worked with Stoffregen on at least two litigated administrative proceedings in which U.S. West was the adverse party. Affidavit of Philip E. Stoffregen at 2; App. 107. It is clear from these affidavits that Ensrud had a substantial amount of professional contact on a regular basis with lawyers for Teleconnect, both inside and outside the company. Mahon, Ricca, Vestal, and Stoffregen all assert that they considered their communications with Ensrud to be privileged and confidential in nature and that they discussed with Ensrud the need for confidentiality. Mahon Aff. at 2; App. 54; Ricca Aff. at 4; App. 59; Vestal Aff. at 2–4; App. 103–5; Stoffregen Aff. at 3–4; App. 108–9. According to their affidavits, Mahon, Vestal, and Stoffregen believed that the attorney-client privilege extended to these communications. Mahon Aff. at 2; App. 54; Vestal Aff. at 3; App. 104; Stoffregen Aff. at 3–4; App. 108–9.

Without deciding the ultimate issue, we find that these allegations are sufficient to create a genuine issue of material fact as to whether Ensrud was privy to confidential information during his term of employment at Teleconnect. We are cognizant of Ensrud's representations to the contrary: that he possessed no confidential information, that he participated in no legal strategy sessions, that he contributed little or nothing to the work of Teleconnect's lawyers, that the Petition at Law had been substantially drafted well prior to the commencement of Ensrud's employment at Teleconnect, and that even the assertedly confidential information disclosed by Ensrud was subject to discovery through Teleconnect's experts. However, we must decline the invitation to weigh the evidence to form our own conclusions. The summary judgment mechanism is not designed to forecast the work of the finder of fact. Our analysis begins and ends with the evidence propounded by Teleconnect and the reasonable inferences to be drawn from it.

We must next determine whether Teleconnect's allegations that Ensrud made a prohibited disclosure to U.S. West are adequate to withstand a motion for summary judgment. Teleconnect's strongest evidence from which we might infer a disclosure of confidential information is the letter sent by Ensrud to U.S. West's attorney Shively after their Kansas City meeting. By his own admission, Shively suspected that the letter conveyed information obtained by Ensrud during the course of his employment at Teleconnect. Taking as true the affidavits of Mahon, Ricca, Vestal, and Stoffregen, which allege that Ensrud worked as a paralegal privy to significant quantities of confidential information relevant to the lawsuit between Teleconnect and U.S. West, and drawing all reasonable inferences in favor of Teleconnect, we conclude that Teleconnect has created a genuine issue of material fact as to whether a prohibited disclosure actually took place.

Ensrud makes much of the fact that Teleconnect has produced no direct, first-hand evidence showing that confidences were conveyed. It is true that a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis omitted). We believe that the circumstantial evidence produced by Teleconnect is sufficient to meet this burden. In so holding, we reject the notion that only a "smoking gun" will suffice to defeat a motion for summary judgment in suits predicated upon asserted disclosures of confidential information. Through its affida-

vits, transcripts, and *in camera* submissions, Teleconnect has alleged facts from which a rational trier of fact might conclude that Ensrud possessed confidential information and transmitted it to U.S. West in violation of his employment contract or the Iowa Uniform Trade Secrets Act.

■ Finally, we must decide whether Teleconnect's claims against Ensrud should be barred due to the *res judicata* effect of a ruling by the Iowa District Court for Linn County in *Teleconnect Co. v. U.S. West Communications, Inc.*, No. LA–16330 (Sept. 14, 1992), the lawsuit which underlies this case. The order in question denied Teleconnect's motions to (1) strike Ensrud as an expert witness and (2) disqualify Shively's law firm, Faegre & Benson, from representing U.S. West due to his allegedly unethical conduct in contacting and retaining Ensrud. The court held an evidentiary hearing and made a number factual statements unfavorable to Teleconnect. For example, the court found that "Teleconnect has not established that Ensrud knew any confidential or privileged information" and that Ensrud "did not function as a trial consultant or have unrestricted access to Teleconnect's trial preparation or strategies." *Id.*, slip op. at 5. The district court's order was appealed, but the Iowa Supreme Court mooted the issue on the basis of its ruling on the merits in favor of U.S. West. *See Teleconnect v. U.S. West*, 508 N.W.2d 644, 650 (Iowa 1993).

By federal statute, state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. Accordingly, we must "refer to the preclusion law of the State in which judgment was rendered." *Marrese v. American Acad. Ortho. Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985). According to the Iowa Supreme Court, "[i]ssue preclusion, also called collateral estoppel, prevents relitigation of already litigated factual issues which were essential to an earlier judgment on a different cause of

action binding the same parties." *Iowa Elec. Light & Power Co. v. Lagle*, 430 N.W.2d 393, 397 (Iowa 1988). Iowa law permits the doctrine to be employed defensively by strangers to the prior action "only against one who was a party, or in privity with a party, to the judgment and had a full opportunity in the prior action to litigate the relevant issue...." *Goolsby v. Derby*, 189 N.W.2d 909, 916 (Iowa 1971) (citation omitted). A four-part test for issue preclusion was set forth in *Hunter v. City of Des Moines*, 300 N.W.2d 121 (Iowa 1981):

> Before issue preclusion may now be employed in any case, these four prerequisites must be established: (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Id.* at 123. Applying the elements of this test, we conclude that the Iowa state court order should not be accorded *res judicata* effect in the case before us.

First, the issues in the two actions are not identical. The Iowa state court focused not on Ensrud's compliance with his employment contract or the Iowa Uniform Trade Secrets Act, but rather on Faegre & Benson's alleged violations of the canons of professional ethics.[3] The standards for disqualification of counsel are considerably different from those that govern breach of contract claims, and the Iowa state court order must be understood in light of that difference. Second, a careful reading of the statements cited by Ensrud reveals that they are not conclusive findings of fact. Rather, they represent findings that Teleconnect failed to establish its allegations for the purpose of the subordinate proceedings then before the court. To illustrate the point, we quote the key paragraph in full:

> The Court finds that Teleconnect has not established that Ensrud knew any confi-

**3.** "Teleconnect's motions request that the court disqualify Faegre & Benson and strike Ensrud as an expert witness for U.S. West *based on these* *alleged ethical violations.*" Slip op. at 2 (emphasis added).

dential or privileged information. The materials Teleconnect submitted to the Court in camera in support of their motions fail to prove Ensrud had any confidential information to disclose to Faegre & Benson. Although Ensrud advised Teleconnect's attorneys regarding [ISCC] tariffs, he does not appear to have been involved in or privy to any strategy discussions regarding this litigation.

Slip op. at 5. These statements are not affirmative assertions of fact, but rather tentative conclusions occasioned by the court's need to resolve a motion on a collateral and subsidiary matter.

Third, and most important, the state court's conclusions as to Ensrud were not necessary and essential to the decision against disqualification. Again, the language of the opinion reveals the tentative nature of the findings quoted above. Following the paragraph quoted above, the order goes on to explain the validity of its reasoning "[r]egardless of Teleconnect's characterization of Ensrud as a paralegal on their 'litigation team'" and "[e]ven if Ensrud possessed knowledge of Teleconnect's confidential information." Slip op. at 5. Similarly, referring to a memorandum written by Ensrud for Teleconnect and allegedly discussed by Ensrud and Shively at their Kansas City meeting, the court states that "[i]f Ensrud's 1989 memo contained confidential information and if Ensrud revealed that information to Faegre & Benson, Teleconnect could not have been prejudiced because the memo was discoverable under Iowa R.Civ.P. 125(a)(1)(C) or (b)." Slip op. at 6. Based upon the court's careful use of such tentative and conditional language, we find that the order's factual statements as to Ensrud were not necessary and essential to the court's ultimate refusal to disqualify Faegre & Benson and strike Ensrud as an expert witness. Accordingly, we conclude that under Iowa law the state court's order on disqualification is not entitled to preclusive effect in the present action.

In short, we hold that summary judgment was improvidently granted by the district court below. Teleconnect has produced evidence sufficient to create genuine issues of material fact as to whether Ensrud possessed confidential information and whether he disclosed that information to U.S. West's attorneys in violation of his employment contract and the Iowa Uniform Trade Secrets Act. In addition, we hold that the order of the Iowa state court denying Teleconnect's motion to disqualify U.S. West's counsel in the underlying case is not *res judicata* of the factual issues in the case before us. Accordingly, we reverse and remand to the district court for further action consistent with this opinion.