**James D. BAUER, Plaintiff/Appellant,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant/Respondent.**

No. 72112.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 25, 1997.

Motion for Transfer to Supreme
Court Denied Jan. 15, 1998.

therefrom. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Review is essentially *de novo. Id.* The propriety of a summary judgment is purely an issue of law. *Id.*

The record before the trial court on SWBT's motion for summary judgment consisted of affidavits, exhibits, and depositions. The record established that Bauer contacted SWBT and requested "1–900 Call Restriction Service" for two business telephone lines at his service station to block calls to telephone numbers preceded by a 900 prefix, either 1+900 or 0+900. The SWBT representative with whom Bauer spoke advised him that he would not be billed for "unauthorized 900 toll calls." Bauer received the 900 call blocker service at a monthly cost of $18.25 per line, for a total of $36.50.

After the service was in place, Bauer received substantial telephone bills for unauthorized calls made by an employee working the night shift at the service station. The employee circumvented the 900 call blocker service by using the 1–800 call back system, which allegedly worked as follows: the employee dialed a 1–800 number and agreed to a collect call back by pressing a given number; and when the call back occurred, the employee confirmed what was essentially a collect call by pressing a button on the phone.

John Carey, Joseph Danis, T. Evan Schaeffer, Jeffrey Lowe, John Simon, St. Louis, for plaintiff/appellant.

John F. Medler, Jr., St. Louis, for defendant/respondent.

CRANDALL, Judge.

Plaintiff, James D. Bauer (Bauer), appeals from the grant of summary judgment in favor of defendant, Southwestern Bell Telephone Company (SWBT), in plaintiff's action for fraudulent omission, negligent omission, breach of contract, breach of implied covenant of good faith and fair dealing, violating Missouri Merchandising Practices Act, and civil conspiracy. We affirm.

In reviewing appeals from the grant of a summary judgment, the appellate court reviews the record in the light most favorable to the party against whom judgment was entered and accords the non-movant the benefit of all reasonable inferences

Bauer filed the present action against SWBT, seeking actual and punitive damages.[1] Bauer's petition was in six counts, as set forth above. The common thread running through all the counts was that SWBT failed to disclose that the 900 call blocker service was ineffective and/or could be circumvented by using 800 numbers, with the result that Bauer was billed for unauthorized telephone calls made from his business to numbers other than those beginning with 900.

SWBT filed its motion for summary judgment on the ground that Bauer's claims were barred by the filed rate doctrine. The trial

---

1. We note that Bauer attempted to bring this action as a class action, but the class has not been certified and Bauer is the sole plaintiff to the action.

court granted summary judgment on all counts on that basis.

On appeal, Bauer contends the trial court erred in finding that his claims were barred by the filed rate doctrine.

The 900 call blocker service is a tariffed telecommunications service provided by SWBT to its customers. A tariff is a document which lists a public utility's services and the rates for those services. *Southwestern Bell Telephone Co. v. Metro–Link Telecom, Inc.,* 919 S.W.2d 687, 691 (Tex.App.—Hous. (14th Dist. 1996)). A tariff that has been approved by the Public Service Commission becomes Missouri law and has the same force and effect as a statute enacted by the legislature. *Allstates Transworld Vanlines, Inc. v. Southwestern Bell Telephone Co.,* 937 S.W.2d 314, 317 (Mo. App. E.D.1996). When analyzing a tariff, if the tariff is clear and unambiguous, the court cannot give it another meaning. *See id.*

The filed tariff, or filed rate, doctrine governs a utility's relationship with its customers and provides that any rate filed with the appropriate regulatory agency is sanctioned by the government and cannot be the subject of legal action. *Metro–Link Telecom,* 919 S.W.2d at 692. The filed tariff doctrine conclusively presumes that both a utility and its customers know the contents and effect of the published tariffs. *Id.* at 693.

In the case before us, the tariffed description of the 900 call blocker service reads as follows:

> 900 Call Restriction is a central office service which allows customers to restrict certain types of outgoing calls from being placed over their exchange access lines. 900 Call Restriction is activated when a dialed number is preceded by a 900 prefix. Restricted calls are directed to a central office announcement.

P.S.C.—Mo. No. 35, General Exchange Tariff section 13.21. This description is clear and unambiguous in defining the service as

blocking outgoing calls made to numbers preceded by the 900 prefix. There is no reference to any other type of call, such as 800 calls, toll calls, or collect calls, so that the tariffed description indicates only that 900 calls will be blocked. The 900 call blocker service was precisely the service requested by Bauer and it is undisputed that SWBT provided that service in compliance with the tariff.

Because the 900 call blocker service was regulated by tariff, Bauer was charged with constructive notice of the filed tariff. Similar to laws, all Missouri citizens are presumed to know the filed tariffs, and SWBT's failure to inform Bauer of the terms of the tariff was not actionable. *See Uhle v. Sachs Elec.,* 831 S.W.2d 774, 777 (Mo.App.E.D.1992).

Bauer, however, argues that the filed tariff doctrine is not applicable where he alleged fraud. We disagree. "[N]either the customer's ignorance nor the utility's misquotation of the applicable tariff provides refuge from the terms of the tariff." *Teleconnect Co. v. U.S. West Communications, Inc.,* 508 N.W.2d 644, 647 (Iowa 1993). Further, "a customer of a utility has no cause of action against a utility for alleged negligent or intentional misquotation of a tariffed service." *Id.* Courts that have considered the fraud issue almost unanimously have "rejected the notion that there is a fraud exception to the filed rate doctrine." *Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 20 (2d Cir.1994) (citations omitted). The rationale behind applying the filed tariff doctrine when there are allegations of fraud is to prevent "discrimination in rates paid by consumers because victorious plaintiffs would wind up paying less than non-suing ratepayers."[2] *Id.* at 21.

Bauer also argues that the filed rate doctrine is not applicable because he is challenging, not the rate charged, but SWBT's marketing and solicitation of a worthless 900 call blocker service. A similar argument was advanced in *Teleconnect,* 508 N.W.2d at 644. In that case, the defendant told Teleconnect

---

**2.** In *Wegoland,* plaintiffs argued that a class action would eliminate any potential discrimination. In response, the court stated, "Because most of the animating policies behind that filed

rate doctrine are not diminished in the class action context, we hold that the filed rate doctrine applies whether or not plaintiffs are suing for a class." *Wegoland,* 27 F.3d at 22.

that it did not fit the category of customer the tariff was designed to serve; but that it did fit the category for another tariff, which contained a functionally equivalent, but more expensive, service. Teleconnect asserted that the defendant's conduct did not fall within the filed tariff doctrine because the alleged misrepresentation affected only the service Teleconnect would receive, not the price it would pay. *Id.* at 648. The court rejected any rate/service distinction under the filed tariff doctrine. *Id.* The court stated, "We have previously observed that the filed tariff doctrine prohibits discrimination based on service as well as price...." *Id.* (citing *Sheldon v. Chicago B. & Q.R. Co.*, 184 Iowa 865, 870, 169 N.W. 189, 190 (1918)). SWBT's alleged conduct did not fall outside the scope of the filed tariff doctrine.

We therefore conclude that the filed tariff doctrine precluded Bauer's action against SWBT as a matter of law. The trial court did not err in granting summary judgment in favor of SWBT.

The judgment of the trial court is affirmed.

AHRENS, P.J., and KAROHL, J., concur.