**A.C. JACOBS AND COMPANY, INC., and Tesson Heights Limited Partnership, Appellants–Respondents,**

**v.**

**UNION ELECTRIC COMPANY, Respondent–Appellant.**

**Nos. WD 57388, WD 57436.**

Missouri Court of Appeals, Western District.

May 16, 2000.

Paul H. Gardner, Jr., Jefferson City, for appellants/respondents.

Colly Durley, Columbia, for respondent/appellant.

### PAUL M. SPINDEN, Judge.

This appeal arises from a civil action filed by A.C. Jacobs and Company, Inc., and Tesson Heights Limited Partnership [1] to recover electric rate overcharges from Union Electric Company. Before Tesson Heights filed its lawsuit, the Public Service Commission determined that Union Electric violated its rate classification tariffs by placing a retirement facility owned by Tesson Heights on a multiple occupancy residential rate. The commission determined that the retirement facility should have been classified as a "large general service" customer from the inception of its service on October 1, 1986, and continuing through December 31, 1993. The commission decided that it did not have authority to order Union Electric to refund overcharges to Tesson Heights but noted that Tesson Heights could seek recovery of the overcharges in a "court of proper jurisdiction." [2] Tesson Heights, therefore, filed its petition for recovery of the overcharges with the circuit court.

The circuit court entered summary judgment for Tesson Heights and ordered Union Electric to refund $279,156.81 to Tesson Heights, but it entered summary judgment for Union Electric on Tesson Heights' claim for prejudgment interest on the overcharges. Both parties appeal. Tesson Heights asserts that the circuit court erred in refusing to award prejudgment interest on its overcharge claim, and Union Electric asserts that the circuit court erred in not limiting Tesson Heights' recovery of overcharges to 60 months as required by Union Electric's Tariff Sheet [1] 170. We affirm the circuit court's judgment.

Union Electric contends that Tariff Sheet [1] 170 is applicable to this action and limits Tesson Heights' recovery of overcharges to a period not to exceed 60 months.[3] Section V.G.3 of Tariff Sheet [1] 170 says:

Bills rendered which are based on incorrect registrations due to improper meter connections, the application of an improper meter constant, improper application of any rate schedule not selected by customer, or similar reasons, shall be subject to adjustment for the current and twelve (12) prior billing periods for residential customers and *for the current and sixty (60) prior billing periods,* as can be substantiated by Company records, for non-residential customers. No billing adjustment will be made where the dollar amount of the adjustment is 2% or less of the amount previously billed for residential customers, nor less than $15.00 for non-residential customers. No interest shall be paid or

1. We refer to A.C. Jacobs and Company, Inc., and Tesson Heights Limited Partnership collectively as Tesson Heights.

2. The commission relied on *DeMaranville v. Fee Fee Trunk Sewer, Inc.,* 573 S.W.2d 674 (Mo.App.1978), for concluding that it did not have the authority to order a refund because its order would constitute a monetary or pecuniary award or refund.

3. According to Tesson Heights, if we applied Tariff Sheet [1] 170 as urged by Union Electric, it would allow Union Electric to retain approximately $106,588.27 in overcharges unlawfully collected from Tesson Heights from October 1, 1986, through August 1989 and reduce Tesson Heights' overcharge recovery from $279,156.81 to $172,568.54.

collected on any billing adjustment provided for herein.[4]

Union Electric filed this tariff sheet with the commission, and it became effective on May 5, 1990.[5] "A tariff that has been approved by the Public Service Commission becomes Missouri law and has the same force and effect as a statute enacted by the legislature." *Bauer v. Southwestern Bell Telephone Company*, 958 S.W.2d 568, 570 (Mo.App.1997).

■ Tesson Heights asserts that the tariff is not applicable to its case because it violates § 393.140(11), RSMo 1994. Section 393.140 outlines the powers that the General Assembly granted to the commission concerning its regulation of gas, water, electricity and sewer services. Tesson Heights seizes upon § 393.140(11)'s provision that:

> No corporation shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such services as specified in its schedule filed and in effect at the time; nor shall any corporation refund or remit in any manner or by any device any portion of the rates or charges so specified, nor to extend to any person or corporation any form of contract or agreement, or any rule or regulation, or any privilege or facility, except such as are regularly and uniformly extended to all persons and corporations under like circumstances.

This, however, does not provide for the recovery of all overcharges, as Tesson Heights contends, but authorizes the com-

mission to establish rules and regulations "to carry into effect the provisions of the subdivision[.]" Section 393.140(11).

To help assure that Union Electric does not overcharge its customers, § 393.140(11) gives the commission authority to require Union Electric "to file with the commission and to print and keep open to public inspection schedules showing all rates and charges made, established or enforced or to be charged or enforced[.]" Nothing in § 393.140 prescribes how overcharges and refunds should be handled, so, to the extent that Tesson Heights argues that Tariff Sheet[1] 170 violates § 393.140(11), its contention is without merit.

Moreover, § 393.130.1, RSMo 1994, says:

> All charges made or demanded by any such gas corporation, electrical corporation, water corporation or sewer corporation for gas, electricity, water, sewer or any service rendered or to be rendered shall be just and reasonable and not more than allowed by law or by order or decision of the commission. Every unjust or unreasonable charge made or demanded for gas, electricity, water, sewer or any such service, or in connection therewith, or in excess of that allowed by law or by order or decision of the commission is prohibited.

The commission approved Tariff Sheet[1] 170, so it has the same force and effect as a statute. *Bauer*, 958 S.W.2d at 570. By approving the tariff, the commission determined that Union Electric's limiting recovery for billing adjustments to 60 prior

---

4. We added the emphasis.

5. Tesson Heights asserts that Tariff Sheet[1] 170 could not limit its recovery of overcharges before the May 5, 1990, effective date of the tariff because applying it before then would constitute an improper retrospective application of the tariff under Mo. Const. art I, § 13 (1945), which says, "[N]o ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privi-

leges or immunities, can be enacted." Because the tariff is procedural or remedial only and does not affect the parties' substantive rights, it would be applicable to all of Tesson Heights' overcharges. "A new enactment which only affected the remedy has no effect upon vested rights; does not impair the obligation of contracts; and may control in the decision of a case." *Aetna Ins. Co. v. Hyde*, 315 Mo. 113, 285 S.W. 65, 68 (Mo.banc 1926), cert. dismissed, 275 U.S. 440, 48 S.Ct. 174, 72 L.Ed. 357 (1928).

billing periods for non-residential customers was just and reasonable, and any overcharges collected beyond the current and 60 prior billing periods was allowable.

■ Tesson Heights also argues that, because the commission cannot determine damages or award pecuniary relief, the commission had no jurisdiction to approve the 60 prior billing periods limit. The Supreme Court said long ago, "The power [of the commission] to pass on the reasonableness and lawfulness of rates necessarily includes the power to determine the reasonableness and lawfulness of such limitations of liability as are integral parts of the rates." *State of Missouri, ex rel. Western Union Telegraph Company v. Public Service Commission*, 304 Mo. 505, 264 S.W. 669, 672 (Mo.banc 1924). The 60 prior billing period limit is a limitation of liability, not a determination of damages.

■ Moreover § 386.270, RSMo 1994, says:

All rates, tolls, charges, schedules and joint rates fixed by the commission shall be in force and shall be prima facie lawful, and all regulations, practices and services prescribed by the commission shall be in force and shall be prima facie lawful and reasonable until found otherwise in a suit brought for that purpose pursuant to the provisions of this chapter.

No lawsuit whose purpose is to challenge the tariff as unlawful or unreasonable pursuant to § 386.510, RSMo 1994, has been filed. The General Assembly, therefore, has mandated that we deem the "rates, tolls, charges, schedules and joint rates fixed by the commission" to be lawful and reasonable until, in a lawsuit litigating that issue, the commission or a court determines otherwise.

■ Tesson Heights also contends that the 60 prior billing periods limit applies only to "voluntary," or "non-litigated," recoveries of overcharges and does not apply to litigated cases involving a monetary award. We find no such distinction in the tariff. The tariff says, "Bills rendered which are based on ... improper application of any rate schedule not selected by the customer ... shall be subject to adjustment ... for the current and sixty (60) prior billing periods." The commission found that Union Electric provided service to Tesson Heights under an improper rate classification that Tesson Heights did not select. Tariff Sheet[1] 170 is applicable to Tesson Heights' claim for overcharges.

■ To figure out the amount of overcharges to which Tesson Heights is entitled, however, we must determine from what point to begin counting 60 prior billing periods and what falls within "current billing periods." Union Electric asserts that Tariff Sheet[1] 170 applies to Tesson Heights' claim for overcharges, and it contends that we should count only the 60 billing periods before Tesson Heights filed its complaint with the commission. We disagree.

The commission, in determining that Union Electric violated its rate classification tariffs, found that Tesson Heights was charged this rate from the beginning of its service with Union Electric on October 1, 1986. The commission also found that, in 1987 and in 1989, Tesson Heights asked Union Electric why its electric bills were so high and whether it was being charged according to the correct rate. The commission found that Union Electric responded to these inquiries by conducting energy efficiency audits of Tesson Heights' facility and by suggesting various passive energy-saving measures. According to the commission, Union Electric did not mention to Tesson Heights any possible classification change to a general service rate. The commission also found that in 1993 Tesson Heights employed a consulting firm specializing in the examination of utility bills for the purpose of determining opportunities for savings. The consulting firm advised Tesson Heights of the possibility of obtaining a lower commercial rate, and, on January 1, 1994, Union Electric voluntarily changed Tesson Heights' rate to the large

general service classification. On August 25, 1994, Tesson Heights filed its complaint with the commission, seeking the commission's determination that Union Electric improperly classified it on the residential service rate schedule from October 1, 1986, though December 31, 1993.

Union Electric wants us to assume that we start counting backwards for the 60 prior billing periods from the date Tesson Heights filed its complaint with the commission on August 25, 1994. If we did this, however, eight months of the 60 prior billing periods would be for bills in which Union Electric had already placed Tesson Heights on a lower billing rate. That seems illogical, so we reject the argument.

■■■ "[W]e analyze a tariff as we do a statute. If ... a tariff ... is clear and unambiguous, we cannot give it another meaning." *Allstates Transworld Vanlines, Inc. v. Southwestern Bell Telephone Company,* 937 S.W.2d 314, 317 (Mo.App. 1996). "In determining whether the language of a tariff is clear and unambiguous, the standard is whether the tariff's terms are plain and clear to one of ordinary intelligence." *Id.*

The terms of Tariff Sheet[1] 170 are ambiguous. The tariff says, "Bill rendered which are based on ... improper application of any rate schedule not selected by customer ... shall be subject to adjustment ... for the current and sixty (60) prior billing periods, as can be substantiated by Company records, for non-residential customers." The tariff does not inform us from what date we should start to count backwards for the 60 prior billing periods, and it does not explain what it means by "current" billing periods.

A reasonable interpretation is that we would start to count backwards for the 60 prior billing periods from the date Tesson Heights inquired of Union Electric as to whether it was on the appropriate rate. At that point, so long as company records could substantiate the overcharge, Tesson was entitled to any overcharges incurred in the previous 60 billing periods. Therefore, Tesson Heights would be entitled to all of the overcharges it incurred from the date it inquired of Union Electric about its rate in 1987 back to the inception of its service on October 1, 1986.[6]

■■■ Moreover, to rule as Union Electric contends would give Union Electric the incentive to put off a customer's complaints about its rate for as long as it could in hopes that if it put the customer off for more than 60 billing periods any overcharges it collected would blunt the cost of a refund. In other words, putting off a customer for another 60 months after overcharging him for 60 months would result in the utility's breaking even when it finally made a refund. We reject such a reading of the law as unreasonable:

> It is the clear intent of the public service commission law that utilities shall, without the supervision of their customers, provide adequate service at only the correct rate, and no more. This is a duty imposed by law. It was, we believe, the purpose of the legislature, not that customers be required to employ experts to verify the correctness of rates charged, but rather that they might rely on the [utility] company for proper adherence to its approved rate tariffs.

*De Paul Hospital School of Nursing, Inc. v. Southwestern Bell Telephone Company,* 539 S.W.2d 542, 547 (Mo.App.1976).

6. Although not applicable to this action, the commission enacted a regulation, 4 CSR 240–13.025(1)(A), applicable to service and billing practices for residential customers. The regulation became effective on July 10, 1994, and supports our interpretation of the tariff. The regulation says, "In the event of an overcharge, an adjustment shall be made for the entire period that the overcharge can be shown to have existed not to exceed sixty (60) consecutive monthly billing periods, or twenty (20) consecutive quarterly billing periods, calculated from the date of discovery, inquiry or actual notification of the utility, whichever comes first[.]"

Tariff Sheet[1] 170 says, however, that the bills should be subject to adjustment for the "current billing periods." Which billings are current is difficult to identify in this case, but the most logical interpretation, and therefore the one we adopt, is that, because Tesson Heights had incurred overcharges which could be substantiated by company records and because Tesson Heights inquired about the rate and Union Electric did nothing to address the rate issue directly, Tesson would also be entitled to the "current" overcharges it incurred from the date it inquired about the rate counting forward until the date it resolved its inquiry with Union Electric—the date of the commission's decision. We, therefore, conclude that the circuit court did not err in concluding that Tesson Heights was entitled to all of the overcharges it incurred in the amount of $279,156.81.

Tesson Height asserts, however, that the circuit court erred in refusing to award prejudgment interest on its overcharge claim. We disagree. Tariff Sheet[1] 170 says, "No interest shall be paid or collected on any billing adjustment provided for herein." Section 408.020, RSMo 1994, which provides that a nine percent rate of interest is payable for amounts due under contracts when no rate of interest is specified, does not apply in this case. Section 408.020 is inapplicable when a different rate is agreed upon by the parties. *Bolivar Insulation Company v. R. Logsdon Builders, Inc.*, 929 S.W.2d 232, 236 (Mo.App.1996). The business relationship between a utility and its customers is rooted in contract. *National Food Stores, Inc. v. Union Electric Company*, 494 S.W.2d 379, 381 (Mo.App.1973). Because the tariff was approved and filed by the commission, we may presume that Union Electric and its customers knew the contents and effect of the tariffs. *Bauer*, 958 S.W.2d at 570. Thus, because Tariff Sheet[1] 170, which was part of the regulatory contract governing the relationship between Tesson Heights and Union Electric, specifically provided that no interest would be paid on billing adjustments, § 408.020 is not applicable.

We, therefore, affirm the circuit court's summary judgment in favor of Tesson Heights on its claim for overcharges and the circuit court's summary judgment in favor of Union Electric denying Tesson Heights' claim for prejudgment interest on the overcharges.

JOSEPH M. ELLIS, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.