**STATE of Missouri, ex rel. MISSOURI GAS ENERGY, a Division of Southern Union Company, Laclede Gas Company and Atmos Energy Corporation, Respondents,**

v.

**PUBLIC SERVICE COMMISSION of the State of Missouri; Appellant**

**AARP, Human Development Corporation of Metropolitan St. Louis and National Consumer Law Center, Amicus Curiae, Amicus Curiae.**

No. WD 66666.

Missouri Court of Appeals, Western District.

Oct. 31, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 19, 2006.

Application for Transfer Denied Jan. 30, 2007.

Thomas R. Schwarz, Jr., Jefferson City, MO, for appellant, Public Service Commission.

John B. Coffman, Jefferson City, Jay E. Sushelsky, Washington, D.C., for Amicus Curiae, AARP, Human Development Corp., National Consumer Law Center.

Marc D. Poston, Jefferson City, MO, for Amicus Curiae, Office of Public Counsel.

Dean L. Cooper, Jefferson City, MO, for respondent, Missouri Gas Energy.

Michael C. Pendergast, St. Louis, MO, for respondent, Laclede Gas Co.

James M. Fischer, Jefferson City, MO, for respondent, Atmos Energy Corp.

Before HAROLD L. LOWENSTEIN, P.J., PAUL M. SPINDEN, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

**Facts and Procedural Background**

On October 21, 2005, the Office of the Public Counsel (OPC) filed a Motion to Open a New Case and for Finding of Necessity for Rulemaking with the Public Service Commission (Commission). The OPC proposed an emergency amendment to the Cold Weather Rule (CWR).

The existing CWR prescribes the conditions for disconnection and reconnection of heat-related utility services from November 1 through March 31. *See* 4 C.S.R. 240.13.055. Under the rule a customer must pay 80% of the outstanding bill to prevent disconnection or to allow reconnection of services. Each of the Utilities set forth the language of the CWR in their tariffs.

The Emergency Cold Weather Rule (ECWR) proposed by the Office of Public Counsel amended the CWR for the period from January 1 through March 31, 2006, reducing the 80% requirement of payment before reconnection or disconnection of services to 50% or five hundred dollars whichever is less. Additionally, charges related to reconnection or disconnection must be deferred; customers may not be charged interest on the resulting deferrals; customers who are not disconnected because of the rule or who receive disconnection notices must be enrolled in a budget plan; customers who successfully complete a budget plan must be treated as though they had not defaulted; and utilities must describe the emergency provisions in customer notices or contracts. Finally the ECWR allowed utilities to book any costs of the emergency amendment to a deferral account, rather than recognizing such costs as current expenses. The Utilities can seek to recover those deferred costs by booking them under an Accounting Authority Order (AAO) and including them in their next rate case.

On October 25, 2005, the Commission issued an order for comments on the proposed rule. On December 6, 2005, the Commission held a hearing to take further comments on the ECWR. The comments submitted at the meeting and prior to the meeting addressed whether an emergency rule was needed, and what an emergency rule should accomplish if created.

On December 13, the Commission issued an order effective December 16, adopting the ECWR. Missouri Gas Energy, a division of Southern Union Company, Laclede Gas Company, and Atmos Energy Corporation, (collectively referred to as the "Utilities") timely filed motions for rehearing on December 15, which the Commission denied. The Commission filed the ECWR with the Secretary of State on December 16, amending the CWR from January 1, 2006 through March 31, 2006.

On December 16, 2005, the Utilities filed their petition for writ of review and a motion for stay of the Commission's emergency amendment. After a hearing, the Cole County Circuit Court reversed the Commission's Order approving the emer-

gency amendment. The Commission appeals.

## Standard of Review

■ We review the Commission's decision, not the judgment of the circuit court. *State ex rel. City of St. Joseph v. Pub. Serv. Comm'n,* 713 S.W.2d 593, 595 (Mo.App. W.D.1986). We review to determine if the Commission's decision was lawful and reasonable. *Id.* A decision is lawful if it is supported by statutory language. *Id.* A decision is reasonable if it is supported by substantial and competent evidence on the record as a whole. *Id.*

## POINT I

### A. Rate Case or Rulemaking

■ One key to the arguments of the Utilities is that this is a rate case requiring the more rigorous process standards of a contested case. The Commission argues that this is a case of rulemaking requiring a lesser degree of process. A review of the definitions of various terms is instructive to reveal why the Utilities' theories are incorrect.

A rate is "every individual or joint rate, fare, toll, charge, reconsigning charge, switching charge, rental or other compensation of any corporation, person, or public utility ... or any schedule or tariff thereof." § 386.020(45).[1] The ECWR does not affect how much the utility may charge for its services, but only how much of the total amount owed by a customer the utility is allowed to collect in order to prevent disconnection or allow reconnection of gas services during the three-month winter window. "Tariff means a document published by a public utility, and approved by the commission, that sets forth the services offered by that utility and the rates, terms and conditions for the use of those

services." 4 C.S.R. 240–3.010(28). Thus, including the CWR in the Utilities' tariffs does not make it a rate requiring contested case procedures.

The Commission has the power to adopt rules supported by reasonable evidence prescribing "the conditions of rendering public utility service, disconnecting or refusing to reconnect public utility service, and billing for public utility service." § 386.250(6). The Commission may adopt an emergency rule if it: (1) finds an emergency exists affecting public health, safety, or welfare; (2) adopts the rule in a manner "best calculated to assure fairness to all interested ... parties under the circumstances;" (3) provides the protections "extended by the Missouri and United States Constitutions;" and (4) limits the scope of the rule to the "circumstances creating an emergency and requiring emergency action." § 536.025.

Finally, this is not a rate case because it applies across the industry. *See State ex. rel. Atmos Energy Corp. v.Pub. Serv. Comm'n,* 103 S.W.3d 753, 763 (Mo. banc 2003). A contested case is "a proceeding before an agency in which legal rights, duties, or privileges of specific parties are required by law to be determined after hearing." § 536.010(4) (Supp.2005). A rule is "each agency statement of general applicability that implements ... or prescribes law or policy." § 536.010(6) (Supp.2005). This case, like *Atmos,* applies to all the gas utilities and, therefore, is not ratemaking and does not require a contested case procedure, but only the more relaxed rulemaking procedure.

### B. Revenue Neutrality

■ The Utilities argue that "revenue neutrality" is required by the law of Missouri. We find no statute, rule, or case

---

1. All statutory references are to RSMo (2000) or the Cumulative Supplement (2005).

supporting the utilities assertion of revenue neutrality, i.e., that they have a property right to a defined level of revenue. The Utilities cite *Lightfoot* in support of this contention. *Lightfoot v. City of Springfield*, 361 Mo. 659, 236 S.W.2d 348 (1951). However, *Lightfoot* does not support revenue neutrality and extending it to do so is incorrect. *Lightfoot* found that once funds have been collected under a lawful rate they cannot be taken without due process. 236 S.W.2d at 353–54. The Utilities contend this means that any order that affects their revenue must be accomplished through ratemaking procedures. This eviscerates the statutory authority of the Commission to prescribe rules for "disconnecting or refusing to reconnect public utility service." § 386.250(6). Thus, the Utilities ask us to extend the holding in *Lightfoot* to create a property interest in funds already collected under a lawful rate, so that it supercedes the statute allowing the Commission to create rules for the disconnection and reconnection of services. In many cases, such rules will affect the existing revenue streams for the Utilities. We decline to extend the holding of *Lightfoot* to supersede a statute.

■ Furthermore, this court has in no way endorsed or found a "revenue neutrality" requirement. In *Alma*, the Commission did not appeal the circuit court decision requiring revenue neutrality. *State ex. rel. Alma Tel. Co. v. Pub. Serv. Comm'n*, 40 S.W.3d 381, 388–91 (Mo.App. W.D.2001). Thus, the Commission was estopped from relitigating the issue on a subsequent appeal because it was the law of the case. *Id.* The law of the case applies to "subsequent proceedings in the same cause, precluding reexamination." *Oldaker v. Peters*, 869 S.W.2d 94, 97 (Mo. App. W.D.1993). Thus, the holding in *Alma* does not support a suggestion that "revenue neutrality" is required. To so

hold would bind this court by the decision of a circuit court. The current case is a separate cause, so the issue of revenue neutrality is not determined by the decision in *Alma*. Also, the *Alma* court did not reach the substance of the revenue neutrality issue, holding only that it was the law of the case. Therefore, there is no precedent for enforcing revenue neutrality against other cases.

■ Finally, a Commission decision may permissibly affect revenue negatively because there is no requirement to provide a particular return on rates. *Lightfoot*, 236 S.W.2d at 352. It is only required that the rate provides "a just and reasonable return." *State ex rel. Midwest Gas Users' Ass'n. v. Pub. Serv. Comm'n*, 976 S.W.2d 470, 480 (Mo.App. W.D.1998). In this case, the rate has not changed. The only result of this rule is the deferred collection of portions of the bill; the rate itself was not changed.

## C. Accounting Authority Order

The Utilities challenge the accounting authority order (AAO) provided in the ECWR allowing the Utilities to book incremental changes in revenues and expenses. They list four aspects in which this is deficient. First, that the AAO conditions recovery on the filing of a subsequent rate case. Second, the AAO is only a deferral mechanism and provides no assurance of recovery of the deferred costs. Third, in the past AAOs have resulted in the utilities recovering less than the full amounts deferred. Fourth, the ECWR does not provide for full deferral of the carrying and other costs caused by the emergency rule provisions.

■ The first argument is without merit. Although recovery under the AAO is conditioned on filing a subsequent rate case, this is not a case of retroactive rate-making. This court has held that it is

permissible "to defer the final decision on current extraordinary costs until a rate case is in order." *Mo. Gas Energy v. Pub. Serv. Comm'n,* 978 S.W.2d 434, 438 (Mo. App. W.D.1998). The costs of the ECWR are merely a deferment of extraordinary costs. This procedure does not include nor need it include any determination of the reasonableness of the current rates. The Utilities are still charging the current tariffed rates, but under the ECWR are required to defer collection of part of the amount owed until a later time. The ECWR allows placement of any costs of compliance with the ECWR in an AAO. Included in these costs are expenses from the notice requirements and losses in revenue other than those that would have occurred under the current tariff, and those that occur because the customer qualified for low-income assistance. The AAO allows current losses due to the rule to be separately accounted, thus preserving the uncollected, deferred fees until the next rate case. At that time the losses in combination with any other factors may be considered in determining a new rate. This is not retroactive ratemaking, because the past rates are not being changed so that more money can be collected from services that have already been provided; instead, the past costs are being considered to set rates to be charged in the future. *See Midwest Gas Users' Ass'n,* 976 S.W.2d at 481.

■ The second and third arguments are also incorrect. The Utilities are correct that this is only a deferral and that the AAO does not permit them to recover all the losses from this program. Deferrals of extraordinary costs to AAOs have been approved in the past. *Mo. Gas Energy,* 978 S.W.2d at 438. So it is permissible to allow the deferrals.

Although in the past AAOs may have resulted in recovery of less than the amount lost, this is in line with Missouri law. The Utilities are not automatically entitled to receive all of the costs in the next rate case for several reasons. First and foremost is that in a rate case the Commission must consider "all relevant factors." *State ex. rel. Utility Consumers' Council of Mo., Inc. v. Pub. Serv. Comm'n,* 585 S.W.2d 41, 56 (Mo. banc 1979). While these losses are relevant in the proceeding, the Commission, in determining a reasonable rate of return, must look at all factors. Otherwise, it would be pursuing impermissible single-issue ratemaking. *See State ex. rel. Sprint Spectrum L.P. v. Mo. Pub. Serv. Comm'n,* 112 S.W.3d 20, 28 (Mo.App. W.D.2003). Second, AAOs are not the same as ratemaking, and create no expectation of recovery. *Mo. Gas Energy* 978 S.W.2d at 438. Thus, the effects of the terms of the ECWR may be considered in the next rate case to determine a new rate, but cannot bind the Commission to grant absolute recovery for those losses.

■ Furthermore, the AAO should not cover all costs and losses, since it is only a method of deferring costs from the ECWR. The AAO is only available for the costs resulting from implementation of the ECWR that would not have occurred otherwise. Thus, it complies with the statutory requirement that an emergency rule only address the problems associated with the emergency and nothing else. § 536.025.

Finally, the Utilities incorrectly assert that the ECWR imposes on them the obligation to file a rate case to justify their current rates. The ECWR only provides a mechanism whereby losses under the current rates may be recovered under future rates. This is not a requirement to justify their current rates.

We find that the Commission's Order was valid because it followed the correct

rulemaking procedure to implement this emergency rule. Point denied.

### POINT II

■ The final point the Utilities make is that the ECWR is counter to the terms of their tariffs (which contain the text of the regular CWR) and, therefore, the ECWR is invalid because a tariff becomes Missouri law and rules are invalid if they conflict with a state law. § 536.014(a). Thus, the question is: if a utility places the language of a lawful rule in its tariffs, does this prevent the Commission from changing the rule subsequently without a contested case? No Missouri case law was provided, nor was any found, for this contention; therefore, it is a matter of first impression for this court. We find that the Commission may lawfully change a rule included in a tariff.

■ "A tariff is a document which lists a public utility services and the rates for those services." *Bauer v. Sw. Bell Tele. Co.*, 958 S.W.2d 568, 570 (Mo.App. E.D.1997). A tariff has the same force and effect as a statute, and it becomes state law. *Id.* A rule is invalid if it conflicts with state law. § 536.014(2). All orders are prima facie lawful and reasonable. § 386.270. A properly promulgated rule also becomes the law of Missouri. *United Pharmacal Co. of Mo. Inc. v. Mo. Bd. of Pharmacy*, 159 S.W.3d 361, 365 (Mo. banc 2005). The issue is whether placing an existing rule into the body of a tariff destroys the Commission's authority to promulgate that change the rule as found in the tariff.

■ We find that the adoption of a tariff including the text of an existing rule cannot destroy the statutorily granted authority of the Commission to make a new rule in conflict with the rule contained in the tariff. The Commission should not be required to deny a tariff because it accurately states the law as of the time the tariff was approved in order to maintain its statutory authority to promulgate further rules on the subject. By approving the tariff, the Utility is, as far as the rule is concerned, simply verifying the current standing that the rule has as law at that time. This cannot act to limit the statutorily defined power of the Commission to act in promulgating rules. Section 386.250(6) gives the Commission authority to make rules prescribing "the conditions of rendering public utility service, disconnecting or refusing to reconnect public utility service." To allow otherwise would nullify the statute authorizing the power to promulgate such rules.

In *A.C. Jacobs*, a utility had a provision in its tariffs limiting its liability to overcharges to recovery for billing adjustments to the prior sixty billing periods. *A.C. Jacobs & Co. v. Union Elec. Co.*, 17 S.W.3d 579, 582–83 (Mo.App. W.D.2000). A retirement community sued the utility for over billing that resulted from its misclassification under the tariff. *Id.* at 581. The court found that by approving the tariff, the Commission had found the overcharging provisions the utility provided to be just and reasonable. *Id.* at 582–83. Although the Commission had the statutorily granted power to address over billing through rulemaking, no such rule had been promulgated. *Id.* at 582. Thus, it is different from the case at hand, and, therefore, this case is inapplicable.

■ We hold that although a properly passed tariff becomes the law of Missouri, placing the text of rules, which the Commission has already passed, into a tariff does not limit the power of the Commission to promulgate conflicting rules that it has the statutory authority to create. Point denied.

## Conclusion

For the foregoing reasons we affirm the Order of the Commission.

HAROLD L. LOWENSTEIN, P.J., and PAUL M. SPINDEN, J., concur.