**STATE ex rel. OFFICE OF the PUBLIC COUNSEL,**
**Appellant,**

v.

**MISSOURI PUBLIC SERVICE COMMISSION and Laclede Gas Company, Respondents.**

**No. WD 70647.**

Missouri Court of Appeals,
Western District.

Dec. 22, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 2010.

558

Marc D. Poston, Jefferson City, MO, for Appellant.

Steven C. Reed, Counsel, Jennifer L. Heintz, Jefferson City, MO, Co–Counsel for Respondent, Public Service.

Michael C. Pendergast, St. Louis, MO, for Respondent, Laclede.

Before MARK D. PFEIFFER, P.J., JAMES EDWARD WELSH, and KAREN KING MITCHELL, JJ.

1. 31 Mo. Reg. 181–182 (Feb. 1, 2006).

JAMES EDWARD WELSH, Judge.

This appeal involves a dispute over the interpretation and application of an administrative rule of the Public Service Commission, known as "the cold weather rule." *See* 4 C.S.R. 240–13.055. In this case, the Commission authorized Laclede Gas Company to defer for possible future recovery $2,494,311 as Laclede's cost of complying with an amendment to the Commission's cold weather rule, and the circuit court affirmed the Commission's order. The Office of the Public Counsel appeals asserting that the Commission erred in its order deferring Laclede's cold weather rule costs because the order is unlawful and unreasonable, violates the prohibition against retroactive ratemaking, and relies on an agreement that violates the prohibition in Missouri Constitution article I, section 13 against *ex post facto* and retrospective laws. We affirm.

**History of the Cold Weather Rule**

The purpose of the cold weather rule is set forth in 4 C.S.R. 240–13.055 and says: "This rule protects the health and safety of residential customers receiving heat-related utility service by placing restrictions on discontinuing and refusing to provide heat-related utility service from November 1 through March 31 due to delinquent accounts of those customers."

In 2005, the Commission amended the cold weather rule with an emergency amendment effective from December 26, 2005, through March 31, 2006.[1] The purpose of the 2005 amendment was to address a sharp rise in natural gas prices by lessening the payments required of residential customers to get gas service reconnected or to avoid disconnection. The 2005 amendment included a new Section (14) that required gas utilities to reconnect

or reinstate delinquent customers with a payment of fifty percent of their outstanding balance or $500, whichever was less. This lowered the reconnection requirements that otherwise allowed gas utilities to require an eighty percent arrearage payment. The Commission's Emergency Statement stated in part: "As the heating season progresses, without this emergency relief, some customers will not be able to pay their bills in a timely manner, which may result in termination of heating service to their homes."[2] The 2005 amendment also included a utility cost recovery mechanism, explained in the Emergency Statement as "a mechanism whereby natural gas utilities subject to this amendment shall be able to recover all of the reasonably-incurred costs of complying with this amendment."[3] The 2005 amendment's cost recovery mechanism included the following relevant provisions:

(F) A gas utility shall be permitted to recover the costs of complying with this rule as follows:

1. The cost of compliance with this rule shall include any reasonable costs incurred to comply with the notice requirements of this rule;

. . . .

3. No gas utility shall be permitted to recover costs under this subsection that would have been incurred in the absence of this emergency amendment;

. . .

. . . .

(G) A gas utility shall be permitted to recover the costs of complying with this rule through an Accounting Authority Order:

1. The commission shall grant an Accounting Authority Order, as defined below, upon application of a gas utility, and the gas utility may book to Account 186 for review, audit and recovery all incremental expenses incurred and incremental revenues that are caused by this emergency amendment. Any such Accounting Authority Order shall be effective until September 30, 2007.

2. The commission has adopted the Uniform System of Accounts in 4 CSR 240–4.040. Accounting Authority Orders are commission orders that allow a utility to defer certain expenses to Account 186 under the Uniform System of Accounts for possible recovery later. *State ex rel. Office of the Public Counsel v. Public Service Commission*, 858 S.W.2d 806 (Mo.App.1993); *Missouri Gas Energy v. Public Service Commission*, 978 S.W.2d 434 (Mo.App.1998).[4]

Laclede Gas Company and two other utilities sought review of the Commission's approval of the 2005 emergency amendment to the cold weather rule. The utility companies argued that the cost recovery mechanism in the 2005 amendment was unlawful because the utilities were entitled to "revenue neutrality" and that a Commission rulemaking could not cause the utility to incur expenses without allowing the utility to recover those expenses dollar for dollar. The Circuit Court of Cole County reversed the Commission's order, but this court affirmed the Commission's order and said:

The Utilities argue that "revenue neutrality" is required by the law of Missouri. We find no statute, rule, or case supporting the utilities assertion of revenue neutrality, i.e., that they have a property right to a defined level of revenue. . . .

. . . .

---

**2.** *Id.* at 181.

**3.** *Id.*

**4.** *Id.* at 181–82.

[A] Commission decision may permissibly affect revenue negatively because there is no requirement to provide a particular return on rates. *Lightfoot [v. City of Springfield]*, 361 Mo. 659, 236 S.W.2d [348,] 352 [ (Mo.1951) ]. It is only required that the rate provides "a just and reasonable return." *State ex rel. Midwest Gas Users' Ass'n. v. Pub. Serv. Comm'n*, 976 S.W.2d 470, 480 (Mo.App. W.D.1998). In this case, the rate has not changed. The only result of this rule is the deferred collection of portions of the bill; the rate itself was not changed.

*State ex rel. Mo. Gas Energy v. Pub. Serv. Comm'n*, 210 S.W.3d 330, 334–35 (Mo.App. 2006).

Before this court issued its decision, the Commission proposed to amend the cold weather rule again in 2006 to make permanent certain provisions from Section (14) of the 2005 amendment which had expired on March 31, 2006.[5] The permanent amendment was also aimed specifically at assisting customers that had fallen behind on their bills and were either disconnected or in threat of disconnection. The 2006 amendment made permanent the reduced initial payment a utility may charge during the winter for reconnection or reinstatement, which reduced the initial payment from eighty percent of arrears to the lesser of fifty percent of arrears or $500. It also included limitations on costs that could be recovered, which said in pertinent part:

(F) A gas utility shall be permitted to recover the costs of complying with this section as follows:

1. The cost of compliance with this section shall include any reasonable costs incurred to comply with the requirements of this section;

2. No gas utility shall be permitted to recover costs under this section that would have been incurred in the absence of this section, provided that the costs calculated in accordance with paragraph (14)(F)1 shall be considered costs of complying with this section;

. . . .

4. No bad debts accrued prior to the effective date of this section may be included in the costs to be recovered under this section, provided that a gas utility may continue to calculate and defer for recovery through a separate Accounting Authority Order the costs of complying with the commission's January 1, 2006 emergency amendment to this rule upon the same terms as set forth herein. The costs eligible for recovery shall be the unpaid charges for new service received by the customer subsequent to the time the customer is retained or reconnected by virtue of this section plus the unpaid portion of the difference between the initial payment paid under this section and the initial payment that could have been required from the customer under the previously enacted payment provisions of section (10) of this rule, as measured at the time of a subsequent disconnection for non-payment or expiration of the customer's payment plan.

4 C.S.R. 240–13.055(14). The prohibition against recovery of prior bad debts in 4 C.S.R. 240–13.055(14)(F)4 was a new provision not included in the 2005 amendment.

The 2006 amendment included the same Accounting Authority Order cost recovery deferral mechanism used in the 2005 amendment and established the procedure by which a gas utility was to be allowed to defer and recover the costs outlined above:

---

**5.** 31 Mo. Reg. 902–05 (June 15, 2006).

(G) A gas utility shall be permitted to defer and recover the costs of complying with this rule through a one (1)-term Accounting Authority Order until such time as the compliance costs are included in rates as part of the next general rate proceeding or for a period of two (2) years following the effective date of this amendment:

1. The commission shall grant an Accounting Authority Order, as defined below, upon application of a gas utility, and the gas utility may book to Account 186 for review, audit and recovery all incremental expenses incurred and incremental revenues that are caused by this section. Any such Accounting Authority Order shall be effective until September 30, of each year for the preceding winter;

2. Between September 30 and October 31 each year, if a utility intends to seek recovery of any of the cost of compliance with this section, the utility shall file a request for determination of the cost of compliance with this section for the preceding winter season. The request by the utility shall include all supporting information. All parties to this filing will have no longer than one hundred twenty (120) days from the date of such a filing to submit to the commission their position regarding the company's request with all supporting evidence. The commission shall hold a proceeding where the utility shall present all of its evidence concerning the cost of compliance and other parties, including commission staff, shall present any evidence that the costs asserted by the utility should be disallowed in whole or part. Such a proceeding may be waived by the unanimous request of the parties or by a non-unanimous request without objection. The commission shall establish the amount of costs it determines have been reasonably incurred in complying with this section within one hundred eighty (180) days of the utility's request and such amount will be carried forward into the utility's next rate case without reduction or alteration. Such costs shall be amortized in rates over a period of no greater than five (5) years and shall be recovered in a manner that does not impair the utility's ability to recover other costs of providing utility service. If the commission fails to establish the amount of costs within one hundred eighty (180) days, then the amount requested by the utility shall be deemed reasonably incurred.

3. The commission has adopted the Uniform System of Accounts in 4 CSR 240–4.040. Accounting Authority Orders are commission orders that allow a utility to defer certain expenses to Account 186 under the Uniform System of Accounts for later recovery as determined by the commission in a subsequent general rate case[.]

4 C.S.R. 240–13.055(14).

The cold weather rule permits an affected utility to defer and recover the cost of complying with the amendment to the rule through an Accounting Authority Order, which is effective until September 30 of each year for the preceding winter. An Accounting Authority Order allows a utility to defer certain costs for later consideration in a general rate case but does not guarantee a utility a right to recover the amounts deferred in that future rate case.

**Laclede's Request and the Commission's Order**

On September 29, 2006, Laclede applied for an Accounting Authority Order to recover its costs of compliance with the permanent amendment to the cold weather rule for the 2006–2007 cold weather season. The Commission granted Laclede's requested Accounting Authority Order on

December 7, 2006. On October 31, 2007, Laclede requested an order from the Commission authorizing Laclede to defer $2,667,870 as its costs of complying with the cold weather rule amendment. In requesting a determination of its cost of compliance with the amendment to the cold weather rule, Laclede noted that the Commission previously had determined Laclede's cost of compliance with the emergency amendment to the cold weather rule as part of Laclede's rate case proceeding. Laclede, therefore, asked the Commission to defer making a determination on its current request until that request could be evaluated as part of its next rate case.

Commission Staff (Staff) and the Public Counsel opposed Laclede's initial request to defer its determination on its request for an Accounting Authority Order until Laclede's next general rate case. As an alternative to its original request, the Staff and Laclede reached an agreement in which Laclede would be allowed to defer and recover compliance costs of $2,494,311, plus additional interest, in its next general rate case. The Staff and Laclede also agreed Laclede should amortize the agreed-upon amount in rates over a period of five years, beginning with the effective date of the new rates set in Laclede's next general rate case. On February 28, 2008, Staff and Laclede filed this agreement as a non-unanimous stipulation and agreement before the Commission.

The Public Counsel did not sign on to the non-unanimous stipulation and agreement. On February 28, 2008, the Public Counsel filed a position statement with the Commission. On March 5, 2008, the Public Counsel formally objected to the non-unanimous stipulation and agreement.

Thereafter, the Commission held an evidentiary hearing, during which Laclede submitted into evidence a spreadsheet with 8,440 customer accounts that had retained or reconnected service under the cold weather rule amendment. The Commission issued its Report and Order on April 17, 2008, authorizing Laclede to defer $2,494,311 as the costs Laclede incurred complying with the cold weather rule amendment. The Commission allowed Laclede to include in its Accounting Authority Order the difference in the collection of an initial payment of fifty percent to reconnect under the emergency amendment to the rule and the collection of an initial payment of eighty percent to reconnect that was allowed under the previous version of the cold weather rule.

The Commission determined that the provision stating that no bad debts accrued prior to the effective date of the section could be included in the costs to be recovered does not conflict with the Commission's determination in this case because, later in the same subsection, the provision explicitly describes the costs that are eligible for recovery to include "the unpaid portion of the difference between the initial payment paid under this section and the initial payment that could have been required from the customer under the previously enacted payment provisions of section (10) of this rule[.]" 4 C.S.R. 240–13–055(14)(F)4.

The Commission determined Laclede should include $2,494,311 in the previously-approved Accounting Authority Order in this case. The Commission also determined that the $2,494,311 should continue to accumulate interest as provided in the cold weather rule. The Commission ordered Laclede to track additional payments and arrearages to customer accounts connected or reconnected as a result of compliance with the cold weather rule during the time covered by the Accounting Authority Order. The Commission ordered Laclede to report its find-

ings as part of its next general rate case. The Commission denied the Public Counsel's application for rehearing on May 13, 2008.

The Public Counsel filed its petition for writ of review with the Cole County Circuit Court on May 29, 2008. The circuit court entered its judgment on January 6, 2009, affirming the Commission's Report and Order in all respects. Thereafter, the Public Counsel filed this appeal.

## Analysis

In its first point on appeal, the Public Counsel asserts that the Commission's order allowing Laclede to defer its cold weather rule amendment costs was unlawful and unreasonable because it allowed Laclede to defer for possible future recovery: (1) bad debts that accrued prior to the effective date of the cold weather rule amendment, (2) amounts that were not an incremental cost of the cold weather rule amendment, (3) amounts that Laclede would have incurred in the absence of the cold weather rule amendment, and (4) amounts that were not caused by compliance with the cold weather rule amendment. We disagree.

■■ When a party appeals from an order of the Commission, we review the Commission's findings and decision and not the circuit court's judgment. *State ex rel. Mo. Gas Energy v. Pub. Serv. Comm'n,* 186 S.W.3d 376, 381 (Mo.App. 2005). Our review of the Commission's order has two steps: first we must determine "whether the Commission's order is lawful, and second, whether the order is reasonable[.]" *Id.* Lawfulness is determined by whether or not the Commission had the statutory authority to act as it did. *Id.* at 382. Reasonableness depends on whether or not "(i) the order is supported by substantial and competent evidence on the whole record, (ii) the decision is arbi-

trary, capricious or unreasonable, or (iii) the Commission abused its discretion." *Id.* "The party seeking to set aside the Commission's order has the burden to prove by clear and satisfactory evidence that the order was unlawful or unreasonable. § 386.430, [RSMo, 2000]." *State ex rel BPS Tel. Co. v. Mo. Pub. Serv. Comm'n,* 285 S.W.3d 395, 401–02 (Mo.App. 2009).

■ The Public Counsel contends that the Commission's order authorizing Laclede to defer $2,494,311 included debts owed to Laclede prior to the effective date of the cold weather rule amendment and prior to when customers were reconnected or reinstated under the cold weather rule amendment. In particular, the Public Counsel asserts that Laclede should not be allowed to defer amounts that represent the differences in the collection of a customer's payment of fifty percent of the preexisting arrearages to reconnect under the amendment to the rule and the collection of a customer's payment of eighty percent of the preexisting arrearages, which was allowed under the previous version of the cold weather rule. The Public Counsel claims that including these prior bad debts is prohibited by 4 CSR 240–13.055(14)(F)4, which states "[n]o bad debts accrued prior to the effective date of this section may be included in the costs to be recovered under this section[.]"

However, the debts that the Commission allowed Laclede to defer were not prohibited bad debts because 4 CSR 240–13.055(14)(F)4 specifically allows Laclede to include such costs. That regulation states:

> The costs eligible for recovery shall be the unpaid charges for new service received by the customer subsequent to the time the customer is retained or reconnected by virtue of this section

*plus the unpaid portion of the difference between the initial payment paid under this section and the initial payment that could have been required from the customer under the previously enacted payment provisions of section (10) of this rule,* as measured at the time of a subsequent disconnection for nonpayment or expiration of the customer's payment plan.

4 CSR 240–13.055(14)(F)4 (emphasis added). We agree with the Commission that this provision unambiguously allows Laclede to include as part of its cost of compliance the difference between the initial payment required by the permanent amendment and the initial payment under the previous rule.

Indeed, this court's Southern District recently reached the same conclusion in *State ex rel. Missouri Office of Public Counsel v. Public Service Commission,* 293 S.W.3d 63 (Mo.App.2009). In that case, the Public Counsel argued that the Commission's decision to allow Missouri Gas Energy to recover costs which represented the difference between the amount that the company could have collected under the old cold weather rule and the amount that Missouri Gas Energy actually collected was unlawful. *Id.* at 76–77. This court's Southern District concluded, however, that recovery of these costs was legally authorized under 4 C.S.R. 240–13.0555(14)(F)4. *Id.* at 78. The same is true in this case.

The Public Counsel argues, however, that 4 CSR 240–13.055(14)(G)1 limits what a utility may "book to Account 186 for review, audit and recovery" to "all incremental expenses incurred and incremental revenues that are caused by" the cold weather rule amendment. The Public Counsel contends that the "prior bad debts and prior arrearages" that the Commission

allowed Laclede to defer were not incremental expenses.

In interpreting 4 CSR 240–13.055, we employ the same rules of construction that we use when interpreting statutes. *Morton v. Mo. Air Conservation Comm'n,* 944 S.W.2d 231, 238 (Mo.App. 1997). " '[W]here one provision of a regulation contains general language and another provision in the same regulation contains more specific language, the general language should give way to the specific.' " *Dep't of Soc. Servs., Div. of Med. Servs. v. Senior Citizens Nursing Home Dist. of Ray County,* 224 S.W.3d 1, 18–19 (Mo.App. 2007) (quoting *Younger v. Mo. Pub. Entity Risk Mgmt. Fund,* 957 S.W.2d 332, 336 (Mo.App.1997)). Section 14(G)1 of 4 CSR 240–13.055 states generally that only incremental expenses are to be deferred or recovered. Section (14)(F)4 of 4 CSR 240–13.055, however, specifically says that "[a] gas utility shall be permitted to recover the costs of complying" with the cold weather rule, and it specifically sets forth that one such cost eligible for recovery is "the unpaid portion of the difference between the initial payment paid under this section and the initial payment that could have been required from the customer under the previously enacted payment provisions of section (10) of this rule[.]" Thus, even if we were to accept the Public Counsel's contention that a conflict exists between 4 CSR 240–13.055(14)(G)1 and 4 CSR 240–13.055(14)(F)4, the more specific provision—4 CSR 240–13.055(14)(F)4—prevails over the more general one—4 CSR 240–13.055(14)(G)1.

Moreover, the Commission concluded that, even if the specific provision did not prevail over the more general provision, the provisions are not in conflict with each other. The Commission interpreted "incremental expenses" and "incremental revenues" to refer to costs result-

ing from the differences between initial payment requirements. We defer to an agency's interpretation of its own regulation as long as such interpretation does not expand upon, narrow, or result in an interpretation that is inconsistent with the plain and ordinary meaning of the words used in the regulation. *Senior Citizens Nursing Home Dist. of Ray County,* 224 S.W.3d at 15. The regulation does not provide a definition of incremental expenses and revenues.[6] The Commission found that the costs resulting from the differences in initial payment requirements were incremental compliance costs because the amendment deprived Laclede of its best opportunity to collect a large portion of its past-due balances by reducing the initial payment required at the time of reconnection. Thus, the reduction in Laclede's ability to compel a larger initial payment had an adverse impact on Laclede's revenues, and the regulation merely allows Laclede an opportunity to recover those incremental revenues resulting from the cold weather rule amendment. This interpretation of the regulation does not expand upon, narrow, or result in an interpretation that is inconsistent with the plain and ordinary meaning of the words used in the regulation.

■■ The Public Counsel also claims that the accrual accounting basis that Lac-

lede is required to follow by the Uniform System of Accounts is inconsistent with the cash accounting basis that appears in the eligible cost provision in 4 CSR 240–13.055(14)(F)4. To the extent that the Public Counsel is challenging the language of the rule itself, such a challenge is not properly before this court. The Commission's order adopting this language in its rule is a final order of rulemaking, and, pursuant to section 386.550, RSMo 2000, it is not subject to collateral attack in this appeal. Moreover, assuming that an inconsistency exists, it is obvious from the Commission's inclusion of 4 CSR 240–13.055(14)(F)4 that the Commission wanted to include as a cost eligible for recovery the differences in initial payments. The Public Counsel acknowledges that a utility company does not have to keep its accounts in accordance with the Uniform System of Accounts if the company seeks and receives a waiver from the Commission. *See* 4 CSR 240–40.040(5). Given that the Commission can grant a utility company a waiver from following the Uniform System of Accounts, we see no reason why the Commission, through a regulation, cannot allow a utility company to recover costs under the cold weather rule which may be inconsistent with the Uniform System of Accounts.[7]

**6.** To the extent that the Public Counsel attempts to rely on the definition of "long run incremental cost" in section 386.020(33), RSMo Cum.Supp.2008, to support is definition of incremental costs, we are not convinced. Section 386.020(33) refers to changes of costs of increased output. The Commission concluded that the cold weather rule's reference to "incremental expenses" and "incremental revenues" was clearly a reference to the changes in revenues and expenses as a result of a utility's compliance with the rule. Given that 4 CSR 240–13.055(14)(F)4 clearly stated that one such cost eligible for recovery is "the unpaid portion of the difference between the initial pay-

ment paid under this section and the initial payment that could have been required from the customer under the previously enacted payment provisions of section (10) of this rule," we defer and give great weight to the Commission's interpretation of its own regulation.

**7.** The Public Counsel also complains in the argument section of this point relied on that the Commission's order violated 4 CSR 240–40.040 and the Uniform System of Accounts because the expenses deferred are not "extraordinary items" under the Uniform System of Accounts. This contention was not included in the Public Counsel's point relied on and

The Public Counsel also asserts that that the Commission's order was unlawful because it allowed Laclede to defer for possible future recovery costs that Laclede would have incurred in the absence of the cold weather rule amendment. In particular, the Public Counsel relies on 4 CSR 240–13.055(14)(F)2, which states: "No gas utility shall be permitted to recover costs under this section that would have been incurred in the absence of this section[.]" The Public Counsel argues that, without the cold weather rule amendment, Laclede would have reconnected customers under the old cold weather rule and that a portion of these reconnected customers would have incurred additional unpaid arrearages as a result of the reconnection under the old cold weather rule. According to the Public Counsel, these additional arrearages and the resulting bad debts that Laclede would have incurred under the old cold weather rule should be offset from the additional arrearages incurred under the cold weather rule amendment.

Regulation 4 CSR 240–13.055(14)(F) allows a utility to defer and include in its Accounting Authority Order the costs of compliance with the cold weather rule. The Commission determined that, as a practical matter, September 30 was a conservative date to begin the measurement of expenses for the purposes of the cold

weather rule. The estimate used was found to be conservative because the date chosen for measurement tends to be a time when arrearages are lower than normal due to the ability of past-due customers to pay down their arrearages during the summer months. The Commission found some merit to the Public Counsel's argument that Laclede might possibly receive a double recovery if customers subsequently further paid down their past-due balances, but the Commission noted that this was a valid concern only if it is assumed that Laclede's cost amount will be passed through without further consideration in a future rate case. But, such is not the case. In Laclede's next rate case, the Commission will consider the deferred amount along with other relevant factors.[8]

Indeed, in *Missouri Gas Energy*, 978 S.W.2d at 438, this court noted that Accounting Authority Orders "create no expectation that deferral terms within them will be incorporated or followed in rate application proceedings." The court explained:

The whole idea of [an Accounting Authority Order] is to defer a final decision on current extraordinary costs until a rate case is in order. At the rate case, the utility is allowed to make a case that the deferred costs should be included, but again there is no authority for the

has not been preserved for appeal. Contentions not set forth in points relied on are considered abandoned. *Comm. For A Healthy Future, Inc. v. Carnahan*, 201 S.W.3d 503, 511 n. 7 (Mo. banc 2006).

8. Although it seems that the Commission's Report and Order is not final for the purposes of appeal because Laclede's rate has not been set, § 386.540, RSMo 2000, gives "[t]he commission and any party, including the public counsel, who has participated in the commission proceeding which produced the order or decision . . . after the entry of judgment in the circuit court in any action in review" the right to "prosecute an appeal to a court hav-

ing appellate jurisdiction in this state." In this case, the Commission's Report and Order determined Laclede's cost of compliance with the permanent amendment to the cold weather rule and determined the amount that could be included in the Accounting Authority Order. Section 386.540 seemingly gives the parties the right to appeal from this order. *See State ex rel. Office of the Pub. Counsel v. Pub. Serv. Comm'n*, 858 S.W.2d 806 (Mo.App. 1993), as an example of an appeal from a Commission's Report and Order, which allowed a utility company to defer expenses and costs through an Accounting Authority Order.

proposition put forth here that the [Commission] is bound by the [Accounting Authority Order] terms.

*Id.*

■ To help resolve any concerns over double recovery in this case, the Commission, as a cautionary measure, directed Laclede to track additional payments and arrearages for these accounts to further guard against double payment and ordered Laclede to present its findings to the Commission at the next rate case. Thus, to the extent that the Public Counsel asserts that the Commission allowed Laclede to defer costs that Laclede would have incurred in the absence of the cold weather rule amendment, we are not persuaded.

■ The Public Counsel further attacks the Commission's order as unlawful because it allowed Laclede to defer amounts that the Public Counsel asserts were not the result of Laclede's compliance with the cold weather rule. The Public Counsel asserts that Laclede's cost calculation includes many accounts that were reconnected or retained during the cold weather rule period but that were not reconnected or retained under the terms of the cold weather rule amendment. The Public Counsel claims that only those accounts that were reconnected or retained service under the terms of the cold weather rule can be considered for expense purposes. According to the Public Counsel, accounts that Laclede reconnected or reinstated for an amount less than the fifty percent or $500 requirement were not incremental expenses caused by compliance with the cold weather rule amendment because such accounts were reconnected or reinstated for an amount less than what was prescribed by the cold weather rule amendment.

Regulation 4 CSR 240–13.055(14)(F)4 says that a utility company may recover "the unpaid portion of the difference between the initial payment paid under this section and the initial payment that could have been required from the customer under the previously enacted payment provisions of section (10) of this rule[.]" Regulation 4 CSR 240–13.055(10) says:

(C) Initial Payments.

1. For a customer who has not defaulted on a payment plan under the cold weather rule, the initial payment shall be no more than twelve percent (12%) of the twelve (12)–month budget bill amount calculated in subsection (10)(B) of this rule *unless the utility and the customer agree to a different amount.*

2. For a customer who has defaulted on a payment plan under the cold weather rule, the initial payment shall be an amount equal to eighty percent (80%) of the customer's balance, *unless the utility and customer agree to a different amount.*

(Emphasis added.)

■ The emergency amendment to the cold weather rule provides that the payment provisions of Section (10) are applicable to the amendment to the cold weather rule. Section 10(C) permits the customers and utilities to agree to different payment plans than the plans specified in the rule. The record shows that, at times, Laclede did reconnect customers for less than the full amount it could have demanded under the cold weather rule. Laclede was permitted under the rule to negotiate with customers to reconnect service for less than the maximum amount it could have demanded. The purpose of the cold weather rule is to protect consumers who might otherwise lose service from having the interruptions in gas service during the cold weather months. Given the regulation's allowance for and Laclede's willingness to accept less than the full amount

that could have been demanded under the rule to keep more customers connected to gas service (which serves the very purpose of the cold weather rule), we do not find the Commission's order allowing Laclede to defer such amounts as its cost of compliance with the cold weather rule to be unlawful or unreasonable.

The Public Counsel also complains that additional arrearages incurred by customers after they could have been disconnected were a result of Laclede's business decisions and not the cold weather rule amendment. In examining this argument, the Commission noted that the Public Counsel did not "recommend any specific disallowance for these allegedly overstated costs" and "instead merely suggests that the Commission should entirely disallow Laclede's request for determination of costs." The same is true in this appeal. The Public Counsel does not point to the record to supports its contention and just merely opines that the additional arrearages incurred by customers after they could have been disconnected were a result of Laclede's business decisions.

Thus, we conclude that that the Commission's order allowing Laclede to defer its cold weather rule amendment costs was not unlawful and unreasonable. The Commission did not allow Laclede to defer for possible future recovery: (1) bad debts that accrued prior to the effective date of the cold weather rule amendment except as specifically allowed, (2) amounts that were not an incremental cost of the cold weather rule amendment, (3) amounts that Laclede would have incurred in the absence of the cold weather rule amendment, and (4) amounts that were not caused by compliance with the cold weather rule amendment.

 In its second point relied on, the Public Counsel argues that the Commission's order allowing Laclede to defer its cold weather rule amendment costs violates the prohibition against retroactive ratemaking. In particular, Public Counsel asserts that the Commission's order authorizes a cost deferral of bad debts that are already recovered in current rates. We disagree.

As previously noted, Laclede and two other utilities sought judicial review of the Commission's approval of the 2005 emergency amendment to the cold weather rule before this court. In that case, this court specifically found that "[a]lthough recovery under the [Accounting Authority Order] is conditioned on filing a subsequent rate case, this is not a case of retroactive ratemaking." *State ex rel. Mo. Gas Energy*, 210 S.W.3d at 335. In so holding, we said:

> This court has held that it is permissible "to defer the final decision on current extraordinary costs until a rate case is in order.'" *Mo. Gas Energy v. Pub. Serv. Comm'n*, 978 S.W.2d 434, 438 (Mo. App. W.D.1998). The costs of the [emergency cold weather rule] are merely a deferment of extraordinary costs. This procedure does not include nor need it include any determination of the reasonableness of the current rates. The Utilities are still charging the current tariffed rates, but under the [emergency cold weather rule] are required to defer collection of part of the amount owed until a later time. The [emergency cold weather rule] allows placement of any costs of compliance with the [emergency cold weather rule] in an [Accounting Authority Order]. Included in these costs are expenses from the notice requirements and losses in revenue other than those that would have occurred under the current tariff, and those that occur because the customer qualified for low-income assistance. The [Accounting Authority Order] allows current losses due to the rule to be

separately accounted, thus preserving the uncollected, deferred fees until the next rate case. At that time the losses in combination with any other factors may be considered in determining a new rate. This is not retroactive ratemaking, because the past rates are not being changed so that more money can be collected from services that have already been provided; instead, the past costs are being considered to set rates to be charged in the future. *See Midwest Gas Users' Ass'n. [v. Pub. Serv. Comm'n],* 976 S.W.2d [470], 481 [ (Mo.App.W.D.1998) ].

*Id.* at 335–36. The same is true of the current amendment to the cold weather rule.

The Commission's Report and Order merely determined that Laclede "shall include $2,494,311 in the Accounting Authority Order previously approved in this case as its cost of compliance with Commission Rule 4 CSR 240-13.055(14)." The Accounting Authority Order did not and does not set utility rates. The Accounting Authority Order simply allows for certain costs to be separately accounted for *possible* future recovery in a future ratemaking proceeding. No ratemaking occurred in this case. Thus, Laclede's contention that the Commission's use of an Accounting Authority Order to allow Laclede to defer its cold weather rule amendment costs constitutes retroactive ratemaking is without merit.

■ In its final point relied on, the Public Counsel asserts that the Commission's order was unlawful and unreasonable because it violated a prior agreement that the Public Counsel had in Laclede's last rate case, which violated the prohibition in Missouri Constitution article I, section 13 against *ex post facto* and retrospective laws. We disagree.

In its Report and Order, the Commission found that "the method used by Laclede and Staff to determine Laclede's cost of compliance [was] reasonable" and acknowledged that this method was "the same method that that Commission accepted last year as the basis for determining Laclede's cost of compliance with the Commission's emergency amendment to the cold weather rule." The Public Counsel argues, however, that the prior settlement included a unanimous agreement that no party would be deemed to have agreed to any method of cost determination and that no party would be prejudiced or bound in any manner by that agreement in any other proceeding. According to the Public Counsel, the Commission's reliance on a method of cost determination from a stipulation and agreement in a prior case prejudices and binds the Public Counsel in violation of the Commission's order in the last rate case involving Laclede. Further, the Public Counsel contends that by violating the earlier agreement and basing its current order on terms that the Commission approved as non-binding, the Commission's order violated Missouri Constitution article I, section 13, in that it retrospectively impairs the Public Counsel's rights acquired under the stipulation and agreement. In particular, the Public Counsel argues that the Commission's order imposes a new obligation or requirement upon the stipulation and agreement in that the Public Counsel is now required to adhere to a specific cost calculation that the stipulation and agreement specifically stated would not be binding.

The Commission noted, however, that the Public Counsel was not precluded from arguing that the method the Commission previously used was incorrect and that a different method should be used in this case or future cases. The Commission merely concluded that the calculation method it accepted in the recent rate case

was still valid for determining Laclede's cost of compliance in this case. The Commission did not say that the Public Counsel was bound by the prior stipulation and agreement. The Commission merely noted that the same method for determining Laclede's cost of compliance used in the prior rate case was a reasonable method to use in this case. The Public Counsel still had every opportunity to convince the Commission otherwise. We find no violation of the prohibition in Missouri Constitution article I, section 13 against *ex post facto* and retrospective laws, nor do we find that the Commission's use of the same method that it used in Laclede's prior rate case in this case violated the prior stipulation and agreement.

### Conclusion

The Commission's order allowing Laclede to defer its cold weather rule costs is not unlawful or unreasonable, does not violate the prohibition against retroactive ratemaking, and does not violate Missouri Constitution article I, section 13. We affirm.

All concur.